Milton Wayne **HARDY** and Lovell Green Hardy, Individually and d/b/a Game Time Amusements, Petitioner,

v.

The **STATE** of Texas, Respondent.

No. 01–0779.

Supreme Court of Texas.

Argued Sept. 11, 2002.

Decided April 3, 2003.

Rehearing Denied May 8, 2003.

Barry K. Bishop, Marnie Ann McCormick, Clark Thomas & Winters, Austin, for Petitioners.

Idolina Garcia, William F. Lewis, Jr., Office of the Attorney General, Howard G. Baldwin, First Assistant Attorney General of Texas, Michael T. McCaul, Executive Assistant Attorney General, Julie Caruthers Parsley, Office of the Solicitor General of Texas, Austin, Stuart Michael Madison, Bill J. Moore, Assistant County Attorneys, Cleburne, John Cornyn, United States Senate, Washington, DC, for Respondent.

Justice JEFFERSON delivered the opinion of the Court.

This is a civil forfeiture case. The State of Texas seized, among other things, twenty gaming machines, commonly known as eight-liners, while executing a search warrant at Game Time Amusements in Burleson, Texas. Milton Wayne Hardy and Lovell Green Hardy, owners of Game Time Amusements, filed a petition seeking re-

turn of the seized items, contending that the State could not satisfy its burden to prove by a preponderance of evidence that eight-liners: (1) are illegal gambling devices under section 47.01(4) of the Texas Penal Code; and (2) are not protected from seizure by an exclusion to the term "gambling device" under section 47.01(4)(B) of the Penal Code. After a hearing at which both sides presented evidence, the trial court found that the seized eight-liners were illegal gambling devices and ordered their forfeiture. The court of appeals affirmed. 50 S.W.3d 689, 697.

We granted the Hardys' petition for review to resolve recurring questions about civil forfeiture proceedings under article 18.18 of the Code of Criminal Procedure in general, and eight-liner machines in particular. 45 Tex. Sup.Ct. J. 612 (May 11, 2002). We must decide: (1) under article 18.18, which party bears the burden of proof in a civil forfeiture proceeding involving alleged gambling devices, and (2) whether an eight-liner that awards tickets exchangeable for either (a) gift certificates or (b) cash used for play on another machine, satisfies the exclusion to the definition of gambling device in section 47.01(4)(B).

We hold that the State must establish probable cause before initiating a forfeiture proceeding under article 18.18 of the Code of Criminal Procedure. The person found in possession of the seized property must then appear at a show cause hearing and prove, by a preponderance of the evidence, that those machines are not gambling devices. TEX.CODE CRIM. PROC. art. 18.18(f). We also hold that, for purposes of this statute, gift certificates like those awarded here are equivalent to the monetary amount on the face thereof in cash,

and that gaming machines that dispense tickets that may be exchanged for such certificates do not come within the exclusion to the definition of a gambling device in 47.01(4)(B). Finally, we hold that an eight-liner that rewards the player with cash, even if that cash is used only to play another machine, fails to satisfy the section 47.01(4)(B) exclusion. Although we do not agree in all respects with the court of appeals' reasoning, we affirm its judgment.

## I

## BACKGROUND

During the course of gambling investigations, the State executed a search warrant at Game Time Amusements ("Game Time") and seized twenty eight-liners, four slot machines,[1] $2,340.25 in cash, seventy-two $5.00 gift certificates for Wal–Mart/Sam's Club, $130.00 in personal checks, and other miscellaneous items. The State sought forfeiture of these items under Texas Code of Criminal Procedure article 18.18. Following the seizure, the trial court issued a notice pursuant to article 18.18(b) of the Texas Code of Criminal Procedure advising the Hardys that they must show cause why the seized property should not be destroyed or the proceeds forfeited. *See* TEX.CODE CRIM. PROC. art. 18.18(b).

At the show cause hearing, Lovell Hardy testified that the eight-liners are electronic devices that operate at least partially by chance. The object is to win tickets redeemable for cash or prizes. Winnings on the eight-liners are determined by matching symbols in one of eight lines—three horizontal, three vertical, and two diagonal—which give the machines their name. When a player inserts money in

---

1. The Hardys do not argue in this Court that the court of appeals erred in holding that the slot machines, which were seized with the

eight-liners in this case, are gambling devices subject to forfeiture.

one of these eight-liners, the machine records the number of credits. For each play, the machine records the "bets" made and reduces the available credits accordingly. For each win, the machine records the number of points won. When a player finishes playing a particular machine, an attendant "verifies" the points won. The attendant then presses a button on the machine to dispense a number of tickets corresponding to the number of points earned. Once the button is pressed, the point total is deleted so another person can play. The "penny machines" dispense one ticket for every 100 points accumulated, while the "nickel machines" dispense one ticket for every 500 points accumulated.

Hardy testified that the 100–point tickets are worth $1.00 and the 500–point tickets are worth $5.00. A player could exchange these tickets for a $5.00 gift certificate to Wal–Mart or Sam's Club or for credits to play another machine. To exchange tickets for re-play, a player had to present the tickets to an attendant who would then place a corresponding amount of money in another machine.

At the conclusion of the show cause hearing, the trial court found that the eight-liners were gambling devices and that the currency, gift certificates, and miscellaneous items seized were gambling paraphernalia or proceeds. Accordingly, the trial court ordered the seized items, including the eight-liners, slot machines, currency, and gift certificates, forfeited to the State.

At the Hardys' request, the trial court filed findings of fact and conclusions of law. The trial court found that (1) the gift certificates to Wal–Mart and Sam's Club were "things of value" under Texas Penal Code section 47.01(4); (2) the eight-liner machines constituted "gambling devices and gambling paraphernalia" under section 47.01(4); and (3) the eight-liners did not fit within the exclusion set forth in section 47.01(4)(B) of the Texas Penal Code.

The Hardys appealed contending that the evidence was factually and legally insufficient to support the trial court's conclusion that the eight-liners were gambling devices.[2] The court of appeals affirmed the trial court's order and held that "the State bears an initial burden in an article 18.18 forfeiture hearing to show that the seized property is contraband subject to forfeiture." *Hardy*, 50 S.W.3d at 694. The court of appeals held that, once the State makes this showing, the burden shifts to the claimant to prove by a preponderance of the evidence that the seized property is not subject to forfeiture. *Id.* at 694–95. Concluding that the Hardys had not met this burden, the court of appeals held that the eight-liners were gambling devices not covered by the statutory exclusion. *Id.* at 697. Although we disagree that the State bears an initial burden at the forfeiture hearing, we affirm the court of appeals' judgment.

## II

## APPLICABLE LAW

### A

#### Burden of Proof

A civil forfeiture proceeding under chapter 18 of the Texas Code of Criminal

---

**2.** The Hardys and the court of appeals styled the case "Milton Wayne Hardy and Lovell Green Hardy, individually and doing business as Game Time Amusements v. State of Texas." We note, however, that the order of forfeiture signed by the trial court is correctly captioned "In the Matter of Twenty Four Gambling Devices, Gambling Paraphernalia, $2,340.25 in U.S. Currency, Seventy Two Gift Certificates, and $130.00 in Personal Checks." *See, e.g., State v. Lot 10, Pine Haven Estates*, 900 S.W.2d 400, 402 (Tex.App.-Texarkana 1995, no pet.) (noting that, in a forfeiture proceeding, "a proper judgment will concern only the disposition of the property in question").

Procedure is an *in rem* procedure. *See State v. Rumfolo*, 545 S.W.2d 752, 754 (Tex.1976). Thus, it is a proceeding against the property itself, not against the owner, and "does not involve the conviction of the owner or possessor of the property seized." *Id.* A forfeiture proceeding begins when the State presents an affidavit to a magistrate and ends after a show cause hearing in which the magistrate determines whether the seized property should be destroyed or forfeited. In order to initiate a forfeiture proceeding, the State must obtain a search warrant based on a sworn affidavit averring "sufficient facts ... to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." Tex.Code Crim. Proc. art. 18.01(b). The affidavit underlying the search warrant is public information, and the magistrate's clerk must make a copy of the affidavit available for public inspection. *Id.* After the magistrate issues the search warrant, the State executes the warrant by conducting a search and seizure of the property. *Id.* arts. 18.06, .09.

Article 18.18(b) of the Code of Criminal Procedure authorizes forfeiture when, as here, the person found in possession of the property has not been convicted or prosecuted following a seizure. *See id.* art. 18.18(b). In such a case, the statute provides:

> [T]he magistrate to whom the return was made shall notify in writing the person found in possession of the alleged gambling device or equipment, altered gambling equipment or gambling paraphernalia, gambling proceeds, prohibited weapon, obscene device or material, criminal instrument, or dog-fighting equipment to show cause why the property seized should not be destroyed or the proceeds forfeited. The magistrate, on the motion of the law enforcement agency seizing a prohibited weapon, shall order the weapon destroyed or for-feited to the law enforcement agency seizing the weapon, unless a person shows cause as to why the prohibited weapon should not be destroyed or forfeited. A law enforcement agency shall make a motion under this section in a timely manner after the time at which the agency is informed in writing by the attorney representing the state that no prosecution will arise from the seizure.

*Id.* This section requires the magistrate to notify the person found in possession of the alleged gambling device to show cause why the seized property should not be destroyed or forfeited. *Id; see also id.* art. 18.18(d) (stating that the magistrate must send notice to the person found in possession of the property or, if no one is found in possession, the magistrate must post the notice on the courthouse door). If an interested person contests the proposed forfeiture, the magistrate must conduct a show cause hearing to determine the nature of the property. The show cause hearing is an adversarial proceeding in which an interested person challenges the magistrate's finding of probable cause. Article 18.18(f) provides:

> If a person timely appears to show cause why the property or proceeds should not be destroyed or forfeited, the magistrate shall conduct a hearing on the issue and determine the nature of property or proceeds and the person's interest therein. *Unless the person proves by a preponderance of the evidence that the property or proceeds is not gambling equipment,* altered gambling equipment, gambling paraphernalia, gambling device, gambling proceeds, prohibited weapon, criminal instrument, or dog-fighting equipment and that he is entitled to possession, *the magistrate shall dispose of the property or proceeds* in accordance with Paragraph (a) of this article.

*Id.* art. 18.18(f) (emphasis added). Under this statute, then, the property is forfeited to the State unless an interested person shows that it is not a gambling device.

We have suggested in the past that the State has the burden to prove that the seized items are gambling devices. In *State v. Rumfolo,* the State initiated an action for the forfeiture of cash claimed as gambling proceeds. 545 S.W.2d at 754. Police officers obtained a search warrant, raided a dice game, searched the participants, and seized cash. *Id.* at 753. Return was made to the justice court, and the justice of the peace ordered forfeiture of the proceeds. *Id.* The proceeding was appealed to the county court at law and, after a trial *de novo,* that court ordered the cash forfeited to the State. *Rumfolo v. State,* 535 S.W.2d 16, 19 (Tex.Civ.App.-Houston [14th Dist.]), *rev'd* 545 S.W.2d 752, 755 (Tex.1976). The court of appeals reversed and rendered judgment that the State must return the proceeds, holding article 18.18(b) and (f) unconstitutional. *Id.* at 21. We reversed the judgment of the court of appeals and affirmed the judgment of the county court at law. 545 S.W.2d at 755.

At issue in *Rumfolo* was whether article 18.18 satisfied procedural due process requirements. *Id.* at 754. The State had obtained a search warrant and presented testimony at the show cause hearing. *Id.* The respondents were present at the show cause hearing but offered no evidence. *Id.* The respondents argued that the State bore the burden of proof when attempting to deprive a person of property, just as the State bore the burden of proof when seeking to deprive a parent of parental rights. *Id.* We rejected the analogy to parental rights and concluded that "[t]o require claimants to show the property or proceeds is not gambling equipment or gambling proceeds as the case may be, is compatible with the due process require-

ment that claimants receive notice and be afforded an opportunity to present their objections to such forfeiture." *Id.* At the same time, however, we also "construe[d] Art. 18.18 to require the State to assume the burden to prove the proceeds were used in the gambling activity and to trace the money to the named respondents." *Id.* This statement from *Rumfolo*—coupled with our holding that requiring a claimant to show that property is not gambling equipment or gambling proceeds does not violate due process—has generated confusion concerning the proper allocation of the burden of proof in civil forfeiture proceedings. *E.g., Hardy,* 50 S.W.3d at 694 (stating that "[w]e view *Rumfolo* as requiring the State to make a prima facie showing that the property in question is contraband subject to forfeiture"); *Id.* at 698 (Gray, J., concurring) (stating that the *Rumfolo* holding does not support placing the burden of proof on the State); *State v. One Super Cherry Master Video 8–Liner Machine,* 55 S.W.3d 51, 53 (Tex.App.-Austin 2001), *rev'd,* —— S.W.3d ——, 2002 WL 32069561 (Tex.2003) (holding that the State bore the burden to prove that the eight-liners at issue were gambling devices); *Burnom v. State,* 55 S.W.3d 752, 753 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (under article 18.18(b), the State "has no burden to prove that the monies seized were gambling proceeds"); *Craig v. State,* 707 S.W.2d 164, 165 (Tex.App.-Houston [1st Dist.] 1986, no writ) (holding that State has burden of proving all elements of article 18.18 because it "initiated the forfeiture proceeding"); *Brown v. Barlow,* 685 S.W.2d 406, 408 n. 2 (Tex.App.-San Antonio 1985, orig. proceeding) (stating that by failing to offer evidence at hearing, State did not meet its burden of proof under *Rumfolo* ).

We agree with the concurring opinion in the court of appeals that article 18.18(f)

unmistakably places the burden of proof at the show cause hearing on the person found in possession of the allegedly illegal equipment. 50 S.W.3d at 698 (Gray, J., concurring); *see also* TEX.CODE CRIM. PROC. art. 18.18(f). Although we quoted those portions of article 18.18 in *Rumfolo,* our due process analysis focused on the notice and hearing provided to the claimants, rather than the State's burden of proof at the show cause hearing. To the extent that *Rumfolo* conflicts with our holding today, we disapprove of it.

 Thus, while we agree with the court of appeals that the State bears an initial burden in a civil forfeiture proceeding, we disagree that article 18.18 places any burden on the State at the show cause hearing itself. Under the statutory scheme in article 18, the State's initial burden is satisfied to the extent the State establishes probable cause for seizing the person's property. TEX. CONST. art. I, § 9 ("No warrant … shall issue … without probable cause."); TEX.CODE CRIM. PROC. art. 18.01(b); *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987); *see also United States v. $129,727.00 U.S. Currency,* 129 F.3d 486, 492 (9th Cir.1997) (under federal forfeiture statute, government must show probable cause to initiate forfeiture proceeding; once that burden is met, burden shifts to property owner); *United States v. $506,231 in United States Currency,* 125 F.3d 442, 451–52 (7th Cir. 1997). Probable cause is a reasonable be-

lief that "a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency,* 730 S.W.2d at 661 (quoting *United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir.1981)). "It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property." *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency,* 730 S.W.2d at 661; *State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex.1991).

 Once the State has established probable cause to initiate a forfeiture proceeding, the State has met its burden under article 18.[3] At that point, the burden shifts to the claimant to prove that the property is not subject to forfeiture under article 18.18(f), which provides that, "unless the [interested person] proves by a preponderance of the evidence that the property or proceeds is not gambling equipment … the magistrate shall dispose of the property or proceeds…." TEX.CODE CRIM. PROC. art. 18.18(f). If the claimant fails to meet its burden of proof, the property will be destroyed or forfeited to the State. *Id.* art. 18.18(a), (f). Additionally, if any interested person fails to appear at the show cause hearing, the property is automatically forfeited to the State. *See id.* art. 18.18(e). Thus, the ultimate burden of proof in an article 18.18 forfeiture

**3.** Because the Hardys do not challenge the search warrants or the constitutionality of the statute, we need not decide whether in addition to the show cause hearing, article 18 provides interested persons any other avenue of redress. At least one court has held that, after seizure, an interested person may apply for restitution of the property pending arrest and charge or indictment. *See In re Cornyn,*

27 S.W.3d 327, 334 (Tex.App.-Houston [1st Dist.] 2000, no pet); *see also* TEX.CODE CRIM. PROC. art. 18.12. Additionally, we have yet to decide whether, if the State lacked probable cause to obtain a search warrant, evidence obtained pursuant to that warrant might be subject to suppression under the exclusionary rule. *State v. $217,590.00,* 18 S.W.3d 631, 632 n. 1 (Tex.2000).

proceeding is on the possessor of the property, not the State.

■ In this case, the State met its threshold burden. Before the magistrate issued the warrant, the State was required to file sworn affidavits setting forth substantial facts giving rise to probable cause. *Id.* art. 18.01(b); 50 S.W.3d at 698. Although the affidavits are not in the record before this Court, the statute required the State to present sufficient facts to "satisfy the issuing magistrate that probable cause does in fact exist for [the warrant's] issuance." TEX.CODE CRIM. PROC. art. 18.01(b). Because the magistrate could not have issued the warrant in this case absent substantial facts to establish probable cause, and because the Hardys have never claimed that the State lacked probable cause or that the search warrant was invalid, we presume that the State's affidavits met its probable-cause burden. *See United States v. Real Prop. Known & Numbered as Rural Route 1, Box 137–B, Cutler, Ohio,* 24 F.3d 845, 850 n. 3 (6th Cir.1994) (noting, under federal forfeiture statute, "[i]f a claimant makes no challenge to this initial determination ... it can stand as the determination of probable cause"). The State thus established a substantial connection between the seized property and illegal activity. Once the State satisfied the magistrate that it had probable cause for the warrant, the State's burden was met. Accordingly, the burden then shifted to the Hardys to prove by a preponderance of the evidence that the seized machines were not illegal gambling devices subject to forfeiture.

Having determined that the Hardys bore the burden of proof at the show cause hearing, we turn to the second issue: whether the Hardys proved that the seized eight-liners were not gambling devices.

## B
### Gambling Devices

Historically, gambling in Texas has been proscribed. As early as 1861, the Texas Constitution prohibited most types of gambling. TEX. CONST. art. VII, § 17 (1861) (stating that "[n]o lottery shall be authorized by this State; and the buying and selling of lottery tickets within this State is prohibited"); *see also* TEX. CONST. art. III, § 47 (1876) (requiring "[t]he Legislature [to] pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States"); 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 192–94 (1977). Since 1980, the constitution has been amended several times to allow bingo, charitable raffles, and a state lottery under specified circumstances. *See* TEX. CONST. art. III, § 47(b), (c), (d), (e). Our current constitution requires that the Legislature prohibit all lotteries or gift enterprises other than those the constitution expressly authorizes. *Id.* § 47(a).

Chapter 47 of the Penal Code prohibits most gambling, including betting money or other things of value on games played with cards, dice, balls, or other gambling devices. TEX. PENAL CODE § 47.02. The Penal Code defines a gambling device as

> any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, *whether or not the prize is automatically paid by the contrivance.*

TEX. PENAL CODE § 47.01(4).[4]

4. Article 18.18 of the Code of Criminal Proce- dure, which provides for forfeiture of seized

■ Until recently,[5] possession and operation of all gambling devices was illegal. *See* Act of May 31, 1993, 73d Leg., R.S., ch. 774, § 1, 1993 Tex. Gen. Laws 3027, 3027–28 (amended 1995). In 1993, however, the Legislature amended the definition of gambling device to exclude

> any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

Tex. Penal Code § 47.01(4)(B). In this case, the Hardys do not contend that the seized eight-liners are not gambling devices under the general definition in 47.01(4). Instead, they contend that their eight-liners fall within the exclusion provided in section 47.01(4)(B). Eight-liners fall within the statutory exclusion only if they reward players "exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." *Id.* § 47.01(4)(B). While we recognize that, in some cases, whether a machine falls within the statutory exclusion may involve a factual inquiry into the

nature of the reward conferred, in this case, the pertinent facts are undisputed. The eight-liners at issue did not award prizes, toys, or novelties. They awarded tickets that could be exchanged either for gift certificates or cash to play other machines.[6] Thus, we must decide whether the tickets issued by the eight-liners in this case are representations of value that are redeemable solely for noncash merchandise prizes, toys, or novelties. We conclude they are not.

We address first whether the gift certificates issued in this case fit within the statutory exclusion. The parties agree that a gift certificate is not a toy or novelty. At issue, therefore, is whether a gift certificate, like the kind awarded here, is a "noncash merchandise prize." The word "noncash" simply means not cash. "Cash" is defined either as "ready money (as coin, specie, paper money, an instrument, token, or anything else being used as a medium of exchange)" or "money or its equivalent paid immediately or promptly after purchasing." WEBSTER'S THIRD NEW INT'L DICTIONARY 346 (1961). In this case, the gift certificates were used as a medium of exchange at various retail outlets. As the court of appeals correctly noted, gift certificates, like those awarded here, are an equivalent of money; five-dollar gift certificates, redeemable for merchandise at Wal Mart, may be used in precisely the same manner as five-dollar bills. 50 S.W.3d at

gambling devices, does not itself define gambling devices. It does, however, incorporate the Penal Code's definition of gambling device. *See* TEX.CODE CRIM. PROC. art. 18.18(g)(2).

**5.** Paragraph (B) was introduced in Senate Bill 522, which amended section 47.01(4) and became effective August 30, 1993. Act of May 31, 1993, 73rd Leg., R.S., ch. 774, § 1, 1993 Tex. Gen. Laws 3027, 3027–28. Yet when the new Penal Code became effective on September 1, 1994, it did not contain paragraph (B). TEX. PENAL CODE § 47.01(4) (1994). Conse-

quently, the Legislature re-enacted the amendment in 1995. Act of May 27, 1995, 74th Leg., R.S., ch. 318, § 19, 1995 Tex. Gen. Laws 2734, 2742.

**6.** Although the eight-liners in this case do not meet the section 47.01(4)(B) exclusion, we do not address whether an eight-liner that dispenses gift certificates as representations of value redeemable for noncash merchandise prizes, toys, or novelties, and that otherwise complies with section 47.01(4)(B), may satisfy the statutory exclusion.

697. Indeed, the ease with which the Game Time certificates can be converted to cash distinguishes them from five-dollar stuffed animals or other novelty items for which there is no readily marketable value. If, as here, the reward operates in the same manner as legal tender in a retail establishment, it does not qualify as a non-cash merchandise prize, toy or novelty item. This interpretation comports with the plain language of the statute. *Accord Texas v. del Sur Pueblo,* 220 F.Supp.2d 668, 704 n. 5 (W.D.Tex.2002) ("The Court notes its view that gift certificates are *not* a noncash merchandise prize" under section 47.01(4)(B).) (emphasis in original). Thus, because the eight-liners at issue here rewarded the players with "cash" or its equivalent, the machines do not satisfy the section 47.01(4)(B) exclusion.

■ Additionally, the evidence established that a player could exchange his or her tickets for cash to be played on another machine. Players could take their tickets to an attendant who would then deposit either $1.00 or $5.00 in a machine, depending on whether the ticket was worth 100 or 500 points. This practice of exchanging tickets for cash also removes the machines from the section 47.01(4)(B) exclusion. While additional play in itself is not proscribed, when that additional play is accomplished by providing cash to play other machines, the statutory exclusion is not satisfied. The exclusion requires that the machine at issue reward the player "*exclusively* with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." TEX. PENAL CODE § 47.01(4)(B) (emphasis added). Under the statute, once cash is awarded, it does not matter whether the player deposited the cash directly into the machine or whether an attendant performed this task. Cash to be used for play on another machine is not a noncash mer-

chandise prize, toy, or novelty. If tickets are exchanged for cash, regardless of whether that cash is used to play another machine, the exclusion does not apply. We leave open the possibility that additional play through some other method may not violate section 47.01(4). But in this case, the machines did not reward the players with representations of value redeemable for *noncash* merchandise prizes. Thus, as a matter of law, the eight-liners at issue do not meet the section 47.01(4)(B) exclusion and were subject to forfeiture or destruction as gambling devices.

## III

## CONCLUSION

For the foregoing reasons, we affirm the court of appeals' judgment.