COURT OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NOS. 2-01-508-CR
        2-01-509-CR
        2-01-510-CR
SUSAN LEA ELMORE                                                                
APPELLANT
V.
THE STATE OF TEXAS                                                                    
STATE
------------
FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
------------
OPINION
------------
A jury convicted Appellant Susan Lea
Elmore of using real estate or a building or a room or other property as a
gambling place, namely, a place used for the operation of gambling devices. The
jury assessed her punishment at one year's confinement in jail, suspended for
two years. The jury also assessed a fine. The trial court sentenced Appellant
accordingly. The trial court sentenced Appellant accordingly. Appellant brings
four issues on appeal, arguing that the trial court erred in denying a hearing
to test the validity of the search warrant affidavit, in failing to suppress the
fruits of an invalid search warrant, in sustaining the State's objection to a
defense exhibit, and in failing to provide a proper limiting instruction in the
court's charge. Because we hold, under the rule of optional completeness, that
the trial court abused its discretion in sustaining the State's objection to
Appellant's exhibit, we reverse the trial court's judgments and remand these
causes to the trial court for a new trial.
Factual Background
On January 2, 2001, pursuant to a search
warrant, Lewisville police seized 100 video gaming machines commonly known as
"eight-liners," gift certificates, pictures, and other documentation,
books, and records from a business known as Treasure City Games. Based upon the
evidence seized, Appellant was charged with fifteen counts of possession of a
gambling device or equipment, the offense of keeping a gambling place, and the
offense of gambling promotion. Appellant pled not guilty to all charges against
her. Extensive evidence was presented by both the State and Appellant relating
to the character and use of the video machines seized. Based upon the evidence
presented, Appellant was convicted by a jury of all the charges. Appellant does
not challenge the sufficiency of the evidence to support her convictions.
Search Warrant
We will address Appellant's second issue
first. In Appellant's second issue, she challenges the sufficiency of the
affidavit supporting the search warrant on the ground that the affidavit failed
to establish probable cause that an offense had been committed. The argument is
based on the premise that the devices described in the affidavit do not meet the
definition of gambling devices. (1) Statements
contained in the affidavit, Appellant argues, are conclusory statements that do
not support probable cause.
A search warrant must be supported by an
affidavit setting forth substantial facts establishing probable cause for its
issuance. (2) For probable cause to exist, an
officer must have reasonable and trustworthy knowledge of facts and
circumstances, sufficient in themselves, to warrant a reasonably cautious person
to believe that a particular individual has either committed or is committing an
offense. (3) In evaluating whether probable cause
existed for the issuance of a warrant, appellate courts must assess the totality
of the circumstances presented within the four corners of the affidavit.
(4)
In the pertinent portions of the affidavit
supporting the search warrant in the cases now before us, the affiant stated,

        
 Affiant has been in the establishment approximately 10 times between the dates
 of June 9, 2000 and January 1, 2001.
        
 On each occasion, Affiant placed U.S. currency into the money receptacles of
 electronic video gambling devices, including, but not limited to FRUIT BONUS,
 CHERRY MASTER 96, TREASURE 2000, SUPER POKER, MAGIC TOUCH, TREASURE QUEST. As
 a result of inserting the money in these devices, your Affiant received
 credits, which were displayed on the video monitor of each device. Affiant
 proceeded to bet according to how machine was configured.
        
 . . . .
        
 Under 47.01(4)(A), these devices, wagered on by your Affiant, have the ability
 to record and cancel credits. Posted odds on the devices, as well as on the
 electronic screen, give the player an[] expectation of winning a greater
 amount tha[n] 47.01(4)(B) allows. Several times during the course of the
 investigation, Affiant placed bets on these devices and won greater than ten
 times the amount of his wager or five dollars, whichever was less. Further,
 47.01(4)(B) states that to be an amusement machine the contrivance rewards the
 player exclusively with noncash merchandise, prizes, toys, or novelties, or a
 representation of value redeemable for those items. Your Affiant was awarded
 tickets, which were redeemed for gift certificates, which does not meet the
 qualification as a noncash merchandise prize, toy, or novelty. Further, this
 gift certificate could be redeemed for cash to further play or wager on the
 gambling devices.
 

We have closely examined the affidavit
supporting the search warrant in these cases. Even though the affidavit states
conclusions, it nevertheless adequately sets out sufficient facts to allow the
examining magistrate to determine whether the affiant's conclusions are accurate
under the law.
Section 47.01(4)(B) provides that a
gambling device

        
 does not include any electronic, electromechanical, or mechanical contrivance
 designed, made, and adapted solely for bona fide amusement purposes if the
 contrivance rewards the player exclusively with noncash merchandise prizes,
 toys, or novelties, or a representation of value redeemable for those items,
 that have a wholesale value available from a single play of the game or device
 of not more than 10 times the amount charged to play the game or device once
 or $5, whichever is less.(5)

Appellant argues that the facts the
affiant relies on to show that the machines are gambling devices show, instead,
that they fall within this exclusion. Since the trial of these cases, the
Supreme Court of Texas has ruled on this issue:

        
 The exclusion requires that the machine at issue reward the player "exclusively
 with noncash merchandise prizes, toys, or novelties, or a representation of
 value redeemable for those items." Tex. Penal Code § 47.01(4)(B)
 (emphasis added). Under the statute, once cash is awarded, it does not matter
 whether the player deposited the cash directly into the machine or whether an
 attendant performed this task. Cash to be used for play on another machine is
 not a noncash merchandise prize, toy, or novelty. If tickets are exchanged for
 cash, regardless of whether that cash is used to play another machine, the
 exclusion does not apply. We leave open the possibility that additional play
 through some other method may not violate section 47.01(4). But in this case,
 the machines did not reward the players with representations of value
 redeemable for noncash merchandise prizes. Thus, as a matter of law, the
 eight-liners at issue do not meet the section 47.01(4)(B) exclusion and were
 subject to forfeiture or destruction as gambling devices.(6)

The machines in the cases before us
yielded tickets redeemable for gift certificates that in turn could be exchanged
for cash. Consequently, the machines do not fall within the statutory exception;
they are gambling devices as a matter of law. (7)
Accordingly, the affidavit sufficiently shows the commission of a criminal
offense. We overrule Appellant's second issue.
Franks Hearing
In her first issue, Appellant claims that
the trial court erred in denying her a hearing to test the validity of the
search warrant affidavit. Specifically, Appellant claims that she was entitled
to a Franks hearing because the affidavit that she submitted with her
motion to suppress showed that the search warrant was based on false
information. (8) Appellant claims that the
officer's affidavit used to justify the search warrant in this case, has a
number of false statements, and those statements were made with knowledge of
their falsity or a in a reckless disregard for the truth of the statements.
Under Franks v. Delaware, the
Supreme Court held that a defendant must make a substantial preliminary showing
that a false statement, made knowingly, intentionally, or with reckless
disregard for the truth, was included in the search warrant affidavit and that
the false statement was necessary to the finding of probable cause to cause the
trial court to hold a hearing regarding the issue. (9)
In order to obtain a Franks hearing, a defendant must challenge
specific sections of the search warrant affidavit, accompany those allegations
of falsity with an offer of proof stating the supporting reasons, and show that
when the portion of the affidavit alleged to be false is excised from the
affidavit, the remaining content is insufficient to support issuance of the
warrant.(10)
In Appellant's affidavit to support her motion to suppress, she
specifically asserted that the police affidavit falsely states that the play of
the devices registered credits towards winning something of value in violation
of section 47.02, that the exception of 47.01(4)(B) did not apply, that rewards
given by the devices exceeded the statutorily acceptable value set forth under
Section 47.01(4)(B), that the tickets awarded by the devices could be redeemed
for items that did not meet the exception of 47.01(4)(B), and that odds were
posted on the machines that reflected their illegality. Appellant claims that
these statements are incorrect.
Because the machines in question are gambling devices as a matter of
law and do not come within the exclusion to the definition of a gambling device
in 47.01(4)(B), the affidavit supporting the search warrant was not false when
it claimed that Appellant owned and operated gambling devices which did not fall
under any exceptions.(11) Therefore, the only
fact in the police affidavit that could be false was whether Appellant had
posted odds on the gambling machines. If we excluded this statement from the
affidavit, probable cause would still remain. Therefore, a Franks
hearing was not required under these circumstances.(12)
We overrule Appellant's first issue.
Rule of Optional Completeness
In her third issue for each case, Appellant complains that the trial
court abused its discretion in excluding a letter she wrote in response to a
letter written to her by the police chief of the City of Lewisville, Texas. The
chief's letter was admitted into evidence. Rule 106 of the Texas Rules of
Evidence provides:

         When a writing or recorded
 statement or part thereof is introduced by a party, an adverse party may at
 that time introduce any other part or any other writing or recorded statement
 which ought in fairness to be considered contemporaneously with it.(13)
 

Similarly, rule 107 provides:

         When part of an act,
 declaration, conversation, writing or recorded statement is given in evidence
 by one party, the whole on the same subject may be inquired into by the other,
 and any other act, declaration, writing or recorded statement which is
 necessary to make it fully understood or to explain the same may also be given
 in evidence, as when a letter is read, all letters on the same subject between
 the same parties may be given.(14)
 

These principles comprise the rule of optional completeness, which was
designed to "guard against the possibility of confusion, distortion, or
false impression that could rise from use [the] of an act, writing,
conversation, declaration, or transaction out of proper context."(15)
In the instant cases, the trial court, over Appellant's objection,
admitted the letter from Chief McFadden. The letter provided notice that
Appellant was operating gambling devices in her place of business. The final
paragraph stated,

         As the Chief of Police, I
 strongly suggest the voluntary removal or re-configuration of all 'gambling
 devices' within the deadline, thereafter I intend to pursue vigorous
 enforcement including but not limited to the seizure of said devices and
 filing charges against any persons found in violation.

The return at the bottom of the letter showed that it was delivered to
Appellant. In response, Appellant offered Defendant's Exhibit Number One, her
reply to Chief McFadden's notice letter, faxed to him two months before the
search warrant was executed. The State objected to the letter on the grounds of
hearsay, and the trial court sustained the objection. The excluded letter
provided:

         Dear Chief McFadden,
         Please be advised that
 Treasure City Games and its game technicians have reconfigured the video games
 currently located at 201 S. Mill Street, Suite 101, Lewisville, Texas. The
 games are full scale, with game counts, and conform with Chapter 47 of the
 Texas Penal Code.
         Treasure City Games will
 re-open for business at 10:00 a.m. Thursday, November 2, 2000.
         Please let us know if you
 have any questions.

Appellant argues that the trial court erred in excluding the letter
because it completed the communication between the parties. We agree. Excluding
Appellant's letter gave rise to a strong possibility that the jury could form a
false impression regarding her intent. (16)
Consequently, the trial court abused its discretion by excluding Appellant's
reply letter.
Appellant argues that the harm to her is unquestionable. She argues
that

 the erroneous ruling left a false impression with the jury on which
 the State capitalized;
 the State repeatedly argued that Appellant had done nothing in
 response to Chief McFadden's notice letter, unfairly prejudicing the jury;
 and
 the exclusion of the letter deprive her of "probative and
 essential evidence concerning the element of intent" as well as a
 mistake of fact defense.

Having found error, we must conduct a harm analysis to determine
whether the error calls for reversal of the judgments. As Justice Gardner of
this court has explained,

         Where erroneous exclusion
 of evidence is the result of misapplication of the rules of evidence and its
 admission is not claimed to be required by the United States or state
 constitutions, we analyze harm under rule of evidence 103(a), which provides
 that error may not be predicated upon a ruling that admits or excludes
 evidence unless a "substantial right" of the party is affected. Tex.
 R. Evid. 103(a); Potier v. State, 68 S.W.3d 657, 666
 (Tex. Crim. App. 2002). The standard is the same as that under rule 44.2(b).
 Tex. R. App. P. 44.2(b); Potier, 68 S.W.3d at 666. A
 substantial right is affected when the error had a substantial and injurious
 effect or influence on the jury's verdict. Johnson v. State,
 43 S.W.3d 1, 3-4 (Tex. Crim. App. 2001).
         In assessing the
 likelihood that the error adversely affected the jury's decision, we consider
 everything in the record, including all evidence admitted for the jury's
 consideration, the nature of the evidence supporting the verdict, the
 character of the alleged error, and how it might have been considered in
 connection with the other evidence. Morales v. State, 32
 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also consider the State's
 theory of the case, any defensive theories, closing arguments, and voir dire. Id.(17)
 

As Appellant points out, the State argued repeatedly that Appellant and
her husband failed to respond to Chief McFadden's letter. For example, during
the State's closing argument, the prosecutor argued,

         You know, Jimmy and Susan
 Elmore were put on notice with a letter from Chief McFadden of the Lewisville
 Police Department. Gambling is illegal, Jimmy and Susan Elmore, you need to
 shut down or get into compliance. You need to shut down and pull out. This is
 your chance. Or we're going to shut you down, and we're going to seize your
 eight-liners and your machines. They had the chance to shut down, and they
 chose not to. They were making $20,000 a week at least. They chose not to shut
 down. I think Chief McFadden was more than fair to the Elmores. He gave them-
         . . . .
         . . . You get to decide.
 Do you think Chief Elmore [sic] was pretty fair to-
         . . . .
         Do you think he was fair?
 He didn't have to send them a letter saying, look, you're out of compliance;
 this is illegal; shut down or get in compliance. He didn't have to do that. He
 could have just gone in right then and there, seized all the equipment, and
 closed them down, but he gave them a chance.
         . . . .
         . . . He gave them a
 chance when he didn't have to. What did they do with that chance? They chose
 to ignore it. Susan Elmore signed this letter [from McFadden]. Sure Jimmy saw
 it too; they're married. And they chose to ignore that letter. They chose to
 proceed on running their casino in Lewisville, Texas, right here in your
 backyard.
         The State continued in
 this tenor, and in rebuttal argument invited the jury to take McFadden's
 letter into the jury room with them. Appellant argued that the machines were
 not gambling devices and that, if they were, there was no intent to operate
 illegal gambling devices. Since intent was the contested issue, the letter
 responding to McFadden's notice was a crucial piece of defense evidence.

Appellant's letter indicates that she shut down the business,
reconfigured the machines, and did not ignore McFadden's warning. Moreover, the
letter creates a real question of intent. The State's argument was, therefore,
misleading and knowingly false. Additionally, even though Chief McFadden's
letter was admitted on a limited basis, despite timely and proper objection, the
trial court failed to include a limiting instruction in the jury charge.
(18) The jury therefore could consider the State's letter for all
purposes during deliberations but did not have the benefit of considering the
Elmores' response to the letter.
For all of the above reasons, we are compelled to hold that the trial
court's abuse of discretion in excluding Defendant's Exhibit Number One affected
Appellant's substantial rights, prevented her from adequately presenting her
defense, and substantially and injuriously affected the jury's verdict.
(19) Consequently, we sustain Appellant's second issue. In light of
our disposition of this issue, we do not reach Appellant's fourth issue in these
cases. (20)
Conclusion
Having held that the trial court abused its discretion by excluding the
responsive letter written by Appellant and that this error affected Appellant's
substantial rights, we reverse the trial court's judgments and remand these
cases to the trial court for a new trial.
 
                                                                       
SAM J. DAY
                                                                       
JUSTICE
 
PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.
PUBLISH
DELIVERED: August 21, 2003

1. See Tex. Penal Code Ann. § 47.01(4) (Vernon
2003).
2. Tex. Code Crim. Proc. Ann. art. 18.01(a), (b) (Vernon
Supp. 2003); Robuck v. State, 40 S.W.3d 650, 653 (Tex. App.--San
Antonio 2001, pet. ref'd).
3. Amores v. State, 816 S.W.2d 407, 413 (Tex.
Crim. App. 1991); Torrez v. State, 34 S.W.3d 10, 17 (Tex. App.--Houston
[14th Dist.] 2000, pet. ref'd).
4. Jones v. State, 833 S.W.2d 118, 123 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 921 (1993); Lagrone v.
State, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987), cert. denied,
485 U.S. 937 (1988); see Illinois v. Gates, 462 U.S. 213, 228-29, 103
S. Ct. 2317, 2326-27 (1983); State v. Duncan, 72 S.W.3d 803, 807 (Tex.
App.--Fort Worth 2002, pet. dism'd, untimely filed); Wynn v. State,
996 S.W.2d 324, 326 (Tex. App.--Fort Worth 1999, no pet.).
5. See Tex. Penal Code Ann. § 47.01(4)(B).
6. Hardy v. State, 102 S.W.3d 123, 132 (Tex.
2003).
7. See id.
8. Franks v. Delaware, 438 U.S. 154, 155-56, 98
S.Ct. 2674, 2676 (1978).
9. Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676;
Carroll v. State, 911 S.W.2d 210, 218 (Tex. App.--Austin 1995, no pet.).
10. Dancy v.
State, 728 S.W.2d 772, 781 (Tex. Crim. App.) cert. denied,
484 U.S. 975 (1987) ; Ramsey
v. State, 579 S.W.2d 920, 922 (Tex. Crim. App. 1979).
11. See Hardy, 102 S.W.3d at 125.
12. Franks, 438 U.S. at 155-56, 98
S.Ct. at 2676; Dancy, 728 S.W.2d at 781.
13. Tex. R. Evid. 106.
14. Tex. R. Evid. 107.
15. Livingston v. State, 739 S.W.2d
311, 331 (Tex. Crim. App. 1987), cert. denied, 487 U.S.
1210 (1988).
16. See id.
17. James v. State, 102 S.W.3d 162,
179 (Tex. App.--Fort Worth 2003, pet. filed).
18. See Rankin v.
State, 974 S.W.2d 707, 712 n.3 (Tex. Crim. App. 1996); see
also Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2003).
19. See James, 102 S.W.3d at 179.
20. See Tex. R. App. P. 47.1.