NO.
12-02-00030-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

                                                                                    

GWIN H. LONG,       §          APPEAL
FROM THE 

APPELLANT

 

V.        §          COUNTY
COURT AT LAW OF

 

THE STATE OF TEXAS,

APPELLEE   §          HENDERSON
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION ON REMAND

            Gwin H. Long
was convicted by a jury of five counts of gambling offenses.  The trial court assessed punishment at sixty
days in jail on each count, to run concurrently, and a $1000.00 fine on each
count.  On original submission, Appellant
presented one issue asserting the trial court abused its discretion by
admitting evidence obtained when officers exceeded the scope of a search
warrant by searching a red caboose that was not specifically described in the
warrant.  This court affirmed the
conviction.  Long v. State,
108 S.W.3d 424 (Tex. App.–Tyler 2003). 
On petition for discretionary review, the court of criminal appeals
found that the search exceeded the scope of the search warrant and that the trial
court abused its discretion in admitting the business records, gift
certificates, and cash seized from the red caboose.  That court reversed our decision and remanded
the case for further proceedings.  Long
v. State, 132 S.W.3d 443 (Tex. Crim. App. 2004).  On remand, we found that the error was
harmful and remanded the cause to the trial court for further proceedings.  Long v. State, No.
12-02-00030-CR, 2004 WL 2158024 (Tex. App.–Tyler Sept. 22, 2004) (not yet
released for publication).  The court of criminal
appeals reversed that decision and remanded the case for further analysis.  Long v. State, 203 S.W.3d 352
(Tex. Crim. App. 2006).  We reverse and
remand.

 








 

Background

            After
the sheriff’s department received several complaints, the Henderson County
Attorney drafted a letter dated February 1, 2000, advising that eight-liners
are illegal gambling devices and their operation is a violation of the
law.  Recipients of the letter were
instructed to voluntarily remove the eight-liners within seventy-two hours of
receiving the letter.  The letter warned
that after the deadline, law enforcement agencies would pursue enforcement of
the gambling laws.  A deputy sheriff hand
delivered the letter to Appellant around February 10, 2000.

            Investigator
Scott Wilson, working undercover, visited Appellant’s place of business,
Trains, on three different days in early March 2000 and played some of the
eight-liner machines in the silver train car. 
Wilson testified that Appellant was in custody and control of the
property and the currency used to bet in the machines.  He also stated that the eight-liner machines
are gambling paraphernalia that indicate a player’s odds of winning.  At trial, he described the machines and how
they worked.  He testified that an
eight-liner is an apparatus by which the player can place a bet and win credits
in exchange for cash placed in the machine. 
The credits can be used for replay, then or at a later time.             Wilson
testified that Appellant explained to him that she no longer rewarded players
with $5.00 Wal-Mart gift certificates. 
Instead, players could enter “tournament play.”  She entered the names, addresses, and phone
numbers of players in a notebook along with the date and number of credits
won.  At the end of the week, the player
with the highest score would win dinner for two and $50.00. Further, players
could use the credits logged in the book to replay at a later date.  Wilson testified that eight-liners operated
as they were at Trains are not adapted solely for amusement purposes.  They did not reward him with noncash
merchandise prizes, toys, or novelties or representations of value redeemable
for those items.  They rewarded him with
an option to win something of cash value, dinner for two and $50.00.  Further, he was able to win more than ten
times the amount he bet and playing involved no skill.  Wilson also testified that he observed
Appellant pay a player with a $5.00 Wal-Mart gift certificate and he saw other
players use gift certificates to play by handing them to Appellant who would
put $5.00 currency into the machine.

            Appellant
testified, explaining that prior to opening Trains as a business, she did
research to determine if it was okay to get into that business.  She visited a club and some stores and saw
that such businesses were being run in several places.  She played some of the games where players
could win $5.00 Wal-Mart gift certificates. 
A club owner told her that Ray Roberts was their vendor so she talked to
Roberts.  She also went to Dave and
Buster’s, where they had similar games that dispensed tickets the players could
trade for prizes.  She explained that at
Dave and Buster’s players could trade the tickets for anything from little pencils
all the way up to stereos and televisions. 
She also went to Chuck E. Cheese and saw similar games.  This sounded like the same thing to her and
she did not see anything wrong with it. 
She did not consult a lawyer to determine if she was in violation of any
gambling laws.  She never spoke to the
county attorney.  She opened her business
the first week of January 2000.

            Defense
witnesses testified that until mid or late February, winners received Wal-Mart
gift certificates but then Appellant began “tournament play.”  From that point on, the weekly winner was to
receive dinner but not cash.  Appellant
explained that she closed her business after receiving the county attorney’s
letter but opened up again for amusement only. 
She testified that her customers were mostly elderly ladies who had
nothing else to do.  It was her idea to
take the person who accumulated the most points in a week out to dinner.  There were 109 entries in the tournament play
notebook.  Appellant also testified that
some people played but did not participate in tournament play and never
returned because she could not pay out anything.  She never took anyone out to dinner because
the same week she began tournament play, Ray Roberts, the owner of the
eight-liners, told her that was against the rules and she needed to quit.  From that point on, “nothing else went into
the book.”  She told her customers that
the use of the eight-liners was for amusement only.  However, her definition of “for amusement
only” included two steak dinners.  She
testified that there was never a $50.00 prize offered.  At some point after he had delivered the
letter from the county attorney, the sheriff’s deputy came back to see if she
was in compliance.  She told him she was
operating for amusement only but did not tell him about the possibility of
winning steak dinners.  She could not
remember if she had begun to offer steak dinners at the time of his second
visit. 

            Rita
Allen testified that in February 2000, she operated a business in Henderson
County and had eight-liners available to play. 
After speaking with the county attorney, she understood that she could
let people play as long as she did not give out any prizes, not even steak
dinners.

            Items
seized from the red caboose included fifteen $5.00 Wal-Mart gift certificates,
$1,575.00 in cash, weekly business receipts from Roberts Vending for January
and February 2000, and bank records in Appellant’s name.  In January and February 2000, Appellant
deposited $30,373.90 in her bank account. 
From the receipts, Wilson deduced that Appellant and Ray Roberts  had a fifty-fifty split.  Appellant explained that although the
receipts from Roberts seem to indicate a fifty-fifty split, she returned ten
percent to him to cover the cost of the machines, making their split sixty-forty.

 

Applicable
Law

            The
court of criminal appeals having previously found error, we must determine if
the error caused harm.  The erroneous
admission of evidence obtained in violation of the Fourth Amendment is
constitutional error analyzed pursuant to Texas Rule of Appellate Procedure
44.2(a).  Long, 203 S.W.3d
at 353.  Reversal is required unless we
can determine beyond a reasonable doubt that admission of the evidence found in
the red caboose did not contribute to the conviction or sentence.  Tex.
R. App. P. 44.2(a); Jones v. State, 119 S.W.3d 766, 777
(Tex. Crim. App. 2003).  If there is a
reasonable likelihood that the error materially affected the fact finder’s
deliberations, the error was not harmless. 
Jones, 119 S.W.3d at 777. 
We are to calculate, as nearly as possible, the probable impact of the
error on the fact finder in light of the other evidence.  Id.  We consider whether the inadmissible evidence
added something that was calculated to cause the fact finder to return a
different verdict than it would have if the evidence had not been
admitted.  Hill v. State,
692 S.W.2d 716, 723 (Tex. Crim. App. 1985).

            Factors
we consider include the importance of the inadmissible evidence to the
prosecution’s case, whether the evidence was cumulative, the presence or
absence of evidence corroborating or contradicting material inadmissible
evidence, and the overall strength of the prosecution’s case.  Delaware v. Van Arsdall, 475
U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986).  While we do not focus on the propriety of the
outcome of the trial, the presence of overwhelming evidence supporting the
finding in question can be a factor in the evaluation of harmless error.  Wesbrook v. State, 29 S.W.3d
103, 119 (Tex. Crim. App. 2000).  We consider
whether there was a reasonable possibility that the error, either alone or in
context, moved the jury from a state of nonpersuasion to one of persuasion as
to the issue in question.  Id.

            Appellant
was charged with two counts of gambling promotion, and one count each of
keeping a gambling place, possessing a gambling device, and possessing gambling
paraphernalia.  A person commits gambling
promotion if she intentionally or knowingly operates or participates in the
earnings of a gambling place or intentionally or knowingly, for gain, becomes a
custodian of anything of value bet or offered to be bet.  Tex.
Penal Code Ann. § 47.03(a)(1), (3) (Vernon 2003).  A person commits an offense if she knowingly
uses as a gambling place any building owned by her or under her control.  Id. § 47.04(a).  A person
commits an offense if, with the intent to further gambling, she knowingly
possesses any gambling device that she knows is designed for gambling
purposes.  Id. § 47.06(a).  Finally, a person commits an offense if, with
the intent to further gambling, she knowingly possesses gambling
paraphernalia.  Id. §
47.06(c).  

            Playing
a gambling device and betting money or other things of value constitute
gambling.  Id. § 47.02(a)(3).  “Bet” means an agreement to win or lose
something of value solely or partially by chance.  Id. § 47.01(1).  A
gambling device is defined as any electronic, electromechanical, or mechanical
contrivance that for a consideration affords the player an opportunity to
obtain anything of value, the award of which is determined solely or partially
by chance, even though accompanied by some skill.  Id. § 47.01(4).  The term
“gambling device” does not include any electronic, electromechanical, or
mechanical contrivance designed, made, and adapted solely for bona fide
amusement purposes if the contrivance rewards the player exclusively with
noncash merchandise prizes, toys, or novelties, or a representation of value
redeemable for those items, that have a wholesale value available from a single
play of the game or device of not more than ten times the amount charged to
play the game or device once or $5.00, whichever is less.  Id. § 47.01(4)(B).

Analysis

            Wilson
testified that he entered an establishment operated by Appellant and placed
bets and played eight-liner machines. 
The eight-liners in Appellant’s establishment meet the statutory
definition of gambling devices.  See Hardy
v. State, 102 S.W.3d 123, 132 (Tex. Crim. App. 2003).  However, it is possible to offer play on an
eight-liner without being in violation of the gambling laws if the player is
rewarded with items meeting certain specifications.  See Tex.
Penal Code Ann. § 47.01(4)(B); Hardy, 102 S.W.3d  at 131. 
Appellant testified that she believed that offering steak dinners
removed her actions from the purview of the gambling statutes.  Although her belief does not dictate how a
prize is characterized under section 47.01(4), this testimony relates to the
issue of intent.  

            In
addition to the elements addressed directly by Wilson’s testimony, the State
was required to prove a culpable mental state for each count.  To obtain a conviction on count one, it had
to prove Appellant intentionally or knowingly operated or participated in the
earnings of a gambling place.  To obtain
a conviction on count two, it had to prove Appellant intentionally or knowingly
became a custodian of United States currency that was bet or offered to be bet
for gain.  Count three required the State
to prove Appellant knowingly used a building that was under her control as a
gambling place.  Counts four and five
required the State to prove Appellant knowingly possessed a gambling device and
gambling paraphernalia with the intent to further gambling.  Intent may be inferred from Appellant’s
actions or conduct.  See McGee
v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989).  Proof of a culpable mental state almost
invariably depends upon circumstantial evidence.  Montgomery v. State, 198 S.W.3d
67, 87 (Tex. App.–Fort Worth 2006, pet. ref’d). 


            The
State argued that Appellant’s intent to gamble was shown because her business
remained open after Allen told her the county attorney said they could not give
out any prizes.  However, Allen was wrong
when she said an operator of eight-liners cannot give out any
prizes.  See Tex. Penal Code Ann. §
47.01(4)(B).  Appellant would not be
required to comply with Allen’s erroneous information and her failure to do so
cannot lend significant weight to the State’s argument that it shows
intent.  The State argued that intent
could be inferred from the fact that Appellant offered steak dinners and $50.00
as prizes.  Appellant and the other
defense witnesses denied that $50.00 was a potential prize.  Appellant explained that she did not think a
steak dinner constituted “payout” and therefore did not think it would violate
the gambling laws.  Also, the State
argued intent could be inferred from Appellant’s failure to tell the deputy
that she was offering these prizes. 
Appellant testified that she could not remember when the deputy visited
her.  She was not sure if she had even
thought of the tournament play idea at the time he was there.  Finally, on the issue of intent, the State
relied heavily on the inadmissible bank statements and records seized from the
caboose.

            In
its argument to the jury, the State emphasized the bank deposits explaining
that it could infer intent to commit the offenses because Appellant deposited
thirty thousand dollars in less than eight weeks.  The prosecutor said the “intent is in the money,”
“money is where the greed is,” and “she was consumed by the greed of the
situation.”  He said the “money shows you
the motive” and the “motive shows you the intent.”  He made more than a dozen references to greed
and money. 

            When
she first opened Trains, Appellant used Wal-Mart gift certificates as currency
to play the eight-liners and as awards for credits.  Appellant shut down her business after
receiving the letter from the county attorney and then reopened with modified
rules of play that Appellant thought resolved the problem.  Although Wilson testified otherwise,
witnesses for the defense said Appellant stopped using the gift certificates by
late February.  Further, Appellant
indicated that she stopped offering dinners when the owner of the machines told
her she should not offer dinners to the winner. 
She never actually awarded a dinner to anyone.  The record thus shows Appellant made changes
in attempts to comply with the law.  

            Defense
witnesses testified that they spent no more than ten dollars per visit at
Trains.  Two of the three said they did
not go there very many times.  Less than
$400.00 in cash was found in the silver train car along with $230 in Wal-Mart gift
certificates.  There were 109 entries in
Appellant’s tournament play notebook, reflecting tournament players for one
week.  Even though some of that week’s
players were not listed, the jury could infer from this evidence that Trains
was not a big money maker.  Further, if
Appellant thought that by virtue of awarding a steak dinner to the winning
player she was offering play purely for amusement purposes, thereby taking the
machines out of the definition of gambling device, then she did not have intent
to 1) operate or participate in the earnings of a gambling place, 2) be the custodian
of money that was bet or offered to be bet, 3) use a building under her control
as a gambling place, 4) further gambling while possessing eight-liners, or 5)
further gambling while possessing paraphernalia that recorded bets.

            The
evidence found in the caboose was not cumulative.  Those records are the only evidence showing
that Appellant and Roberts made a substantial amount of money from use of the
eight-liners.  The admissible evidence of
intent was not overwhelming.  Taking the
inadmissible evidence out of the equation, there is a reasonable likelihood the
jury would not infer intent to use the eight-liners to further gambling based
on Wilson’s testimony, Allen’s testimony, and the fact that Appellant did not
fully explain her method of operation to the deputy.  See Hill, 692 S.W.2d at
723.  In the absence of a large profit,
as shown by the inadmissible evidence, it is a reasonable possibility that the
jury would have believed Appellant’s testimony that she did not think her
method of doing business constituted gambling and that she offered
entertainment from which she made only a little money.  See id. 

 

Conclusion

            Based
on this record, it is a reasonable possibility that the jury could look at the
evidence in the absence of that found in the caboose, or any reference to it,
and be convinced that Appellant believed she was not offering people the
opportunity to gamble.  Thus, it is a
reasonable possibility that the erroneous admission of the items found in the caboose
moved the jury from a state of nonpersuasion to one of persuasion as to the
issue of intent.  See Wesbrook,
29 S.W.3d at 119.  Therefore, we cannot
determine beyond a reasonable doubt that admission of the evidence found in the
caboose did not contribute to Appellant’s convictions on all five counts.  See Tex.
R. App. P. 44.2(a).  We conclude
admission of the evidence found in the red caboose was harmful error.

            We
reverse the trial court’s judgment and remand this
cause for further proceedings.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered April 11, 2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

(PUBLISH)