ANDREW JACKSON MEADOR V. THE STATE.

No. 23697. Delivered June 18, 1947.
Rehearing Denied October 15, 1947.

*Carl Rountree* and *Karl Cayton,* both of Lamesa, for appellant.

*W. C. Huffaker, Jr.,* District Attorney, of Tahoka, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

A grand jury in Dawson County returned an indictment against appellant, charging in the first count thereof, (it being the only count submitted upon the trial) that appellant in Dawson County,—

"* * * on or about the 6th day of May, A. D. 1946, and anterior to the presentment of this indictment, in the County and State aforesaid, Andrew Jackson Meador did then and there unlawfully keep and was then and there interested in keeping a certain building, room, and place there situate, for the purpose of being used as a place to bet and wager, and to gamble with cards and dice then and there played; and as a place where people did then and there resort to gamble, bet and wager on games played with cards and dice."

The prosecution was under Art. 625 P. C. (1925).

Upon the court's own motion, and for reasons stated in the order, venue was changed to Lynn County, where appellant was tried, convicted, and his punishment assessed at two years in the penitentiary.

The facts show that appellant lived some two or three miles from Lamesa in Dawson County on a farm. His residence was some two hundred yards from the public road and was a four or five room house. Immediately behind the residence and within the curtilage was a one room house in which the gambling was going on. A private road led over appellant's land from the highway to appellant's residence. So far as we can ascertain from the facts before us it was an open road, that is, it had no gates on it, and led to and around appellant's residence into the back yard where the room or house in question was located.

About 12:00 o'clock at night on May 6, 1946, Mr. Bennett,

who was the Sheriff of Dawson County, one of his deputies and another party, went to appellant's place. About two weeks prior thereto appellant approached the sheriff in the town of Lamesa and the following conversation occurred between them. We quote from the sheriff's testimony:

"* * * About two weeks before this occurrence, I started to cross the street toward the court house about nine or nine-thirty, and Jack called me, and came over, and came on out to where I was, and asked me if I had a complaint on him, and I said no, and asked him why, and he said, 'Well, a fellow got mad out to my house last night because he lost some money, and said he was going to come up here and file a complaint on me,' and I said, 'Well, as far as I know, he hasn't,' and he said, 'Well, we have been playing poker out there, but there is not going to be any more of it. This is the last of it.' I said, 'If it is the last of it, Jack, I am not going to pry into this; as far as I am concerned, there won't be anything done about it.' "

We do not find where the sheriff received any further information about gambling going on at appellant's premises between this conversation and the night of May 6th. From the facts before us it appears that the sheriff was skeptical about appellant's statement that there would be no more gambling at his house after his conversation with the sheriff, because that officer says quite frankly, "I went out there that night in order to attempt to catch them gambling, or was checking to see if they were." He could not see any gambling from the public road, nor when he first turned into the private road leading to appellant's residence, nor when he drove up to the front of the residence. When he drove into the back yard several cars were parked there, and through the windows and doors of the small house in question he saw a number of men around two tables, apparently gambling, although the sheriff says that through the windows and door he could not see any cards, dice or money. About the time the sheriff and deputy got out of their car appellant came out the back door of his residence, walked with the officers up to the door of the small house, told someone on the inside to unlatch the screen door which was fastened on the inside, opened the door and invited the officers to go in. The officers had not told him they were going in, nor requested him to permit them to go in. After going inside the officers found ten men whose names they secured; some of them were seated at a round table playing poker, others were standing about a long table where a dice game was in progress, both games being played for money. The officers also saw a dice cup and what is called

a "bump board", against which the dice are thrown. The officers had no search warrant nor any warrant for the arrest of appellant, nor for any of the other parties found present. The sheriff testified that he did not arrest anyone that night. We apprehend that he meant no one was taken into actual custody. He told them to report in town Monday morning, and left them there.

Appellant did not testify, but a lady who was spending the night with appellant and his wife testified that they went to a show about eight o'clock, at which time no cars were in the yard; that they got back about eleven o'clock, at which time there were some cars parked in the back yard; that she saw no gambling, and that if appellant went out to the room in the back yard she knew nothing about it. The parties who were gambling testified that before the officers came appellant had been out to the room and brought them some ice water.

Ewell Roberson, one of the gamblers, testified that he and some boys went to the place in question about six o'clock in the afternoon and that they gambled until the officers came. He did not remember whether appellant was there when they first got there. This witness had been out at this little house several times before this occasion when they gambled. Appellant had told this witness in town that he did not want them to gamble any more at his place, and on this particular night had told them before the officers came to quit. Other witnesses present on the night in question testified to the gambling with dice and cards at that time and on prior occasions. Sometimes appellant would gamble with them, and at other times he did not play. One witness testified that on the night in question appellant had been in and out of the room where they were playing before he brought them the ice water. Some of the witnesses testified that they had seen in the little house where they gambled a bucket of eggs, a saddle and a bed roll. Independent of anything the officers testified to seeing or finding on the occasion in question, the witnesses who had engaged in gaming in the little house gave testimony which was sufficient upon which the jury could predicate their verdict that appellant had kept said room for the purpose of being used as a place to gamble with cards and dice, and to which people resorted for that purpose, and this, regardless of whatever appellant's attitude was towards the gaming upon the particular occasion on the night of May 6th.

The court charged the jury that although they found that the room in question was used as a place to gamble, and to

which people resorted for that purpose they could not find appellant guilty unless they found beyond a reasonable doubt that appellant had knowledge thereof and consented thereto, and that even though appellant played and bet at games in the said house they could not convict him unless they found beyond a reasonable doubt that he kept the place for the purpose of being used as a place to gamble with cards and dice, and to which people resorted for that purpose with the knowledge and consent of appellant.

It is appellant's contention that the officers being without a search warrant as provided for in Arts. 632 and 633 P. C., and without a warrant of arrest, violated appellant's constitutional right to have his home and the curtilage thereof immune from unreasonable searches and seizure, and that evidence secured or observed by the officers should not have been received in evidence. As supporting his contention we are cited to Frazier v. State, 119 Tex. Cr. 217, 48 S. W. (2d) 597; Williams v. State, 112 Tex. Cr. R. 307, 17 S. W. (2d) 56; Hall v. State, 105 Tex. Cr. R. 365, 288 S. W. 202; Gonzales v. State, 131 Tex. Cr. R. 15, 95 S. W. (2d) 972. It must here be borne in mind that Arts. 4a and 4b, C. C. P. are no longer the law, they having been expressly repealed by the 41st Legislature, 2d C. S., Ch. 44, p. 78. When the officers drove from the highway up to appellant's house over his private road they were violating no law, state or federal; if they were trespassers in any sense it was only in a civil way. Crowell v. State, 180 S. W. (2d) 343. What they observed through the door and windows of the room was open to the observation of anyone from the outside. To our minds, at this point another rule controls the case which appellant has apparently overlooked. Appellant came out of his residence, and without the officers making any statement to him about going in the room or wanting to go in, appellant without any request by the officers, had the door to the room opened and invited the officers in. This is in evidence without contradiction. It is not necessary to cite authorities on the proposition that if the entry or search is made with the consent or invitation of appellant evidence secured as a result is admissible. What has been said, we think, disposes of bills of exception numbers one, two and three, without the necessity of discussing them separately.

Bills of exception numbers four and five seek to bring forward complaint of statements made in the opening argument of prosecuting counsel. Number four asserts that the argument referred to the failure of appellant to testify on his trial, and

number five claims that the argument refers to the silence of appellant at the time of his arrest. Both bills show that no objection was interposed at the time the argument was made. The bills recite that after the claimed objectionable statements were made counsel for the State closed his argument, and before counsel for appellant had made any argument, and outside the hearing of the jury, counsel for appellant "made known to the Court that he objected to such argument * * *"

"* * * and at that time, explained to the Court that he did not get up and object at the particular time such statement was made because it was so inflammatory, and would consequently, more openly, call the jury's attention to the fact that the defendant had not testified. Whereupon, the Court overruled the objection and the defendant excepted thereto. Upon the closing of the final argument by the State, and before the jury had begun their deliberation, counsel for the defense again called the Court's attention to his objection and asked for a mistrial, and excepted to the Court's refusal of such request, and excepted to the Court's refusal to declare a mistrial."

This court has repeatedly held that such an objection to argument as here appears does not preserve the point, but that the objection should be interposed openly at the time the supposed objectionable argument is made. The announcement of said holding and the reasons therefor will be found in the following cases. Weige v. State, 81 Tex. Cr. R. 476, 196 S. W. 524; Simmons v. State, 93 Tex. Cr. R. 421, 248 S. W. 392; Harris v. State, 93 Tex. Cr. R. 544, 249 S. W. 485; Salinas v. State, 113 Tex. Cr. R. 142, 18 S. W. (2d) 663; Crowley v. State, 117 Tex. Cr. R. 372, 35 S. W. (2d) 437; Texas Jurisprudence, 4th Vol., Sec. 41, pages 63, 64; Herms v. State, 129 Tex. Cr. R. 448, 87 S. W. (2d) 717; Wood v. State, 142 Tex. Cr. R. 282, 152 S. W. (2d) 335.

We find a number of objections urged to the court's charge. From an examination of the court's instructions it appears he must have amended his charge to meet the objections because in several instances it contains instructions which the objections would suggest were at one time not contained in the charge.

From the entire record it appears that the court submitted liberal and complete defensive issues which the jury determined against appellant.

Finding no reversible error, the judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

On original submission this case was presented by both brief and argument. All questions raised were discussed, as the writer believes, to a correct conclusion. A very insistent motion, however, has been filed in which the position is taken that in as much as the sheriff and his deputy appeared on the premises uninvited, and viewed from open windows the gambling, without having obtained a search warrant, that the evidence of what they saw was erroneously admitted. This view was before the Court and was so discussed in the original opinion that we find ourselves much at a loss to enlarge upon that opinion. It is noted, however, that the things the officers saw taking place would hardly be sufficient within themselves to make the State's case. After they were invited to enter the room, they procured additional evidence which was utilized by the prosecution to sustain the charge as laid in the indictment to the effect that the accused was unlawfully keeping a certain building, room, and place for the purpose of being used for a place to bet and wager, and to gamble with cards and dice, and as a place where people resorted to gamble, bet and wager on games. If appellant had refused to permit the officers to enter the premises, and had not previously admitted his guilt as testified to by the sheriff, the evidence sufficient to convict could only have been obtained by securing a search warrant under all of the circumstances as we view them. The State's case was not made by what the sheriff and his deputy saw through the windows, nor was it made by all of the gambling that took place that particular night. The paraphernalia found in the room, together with the statements in the evidence of the gamblers, and the admission a few days prior thereto by appellant to the sheriff, are required to sustain the conviction.

The authorities cited by appellant will not sustain the contention that the evidence was obtained by an unlawful entry of the premises. As observed in the original opinion, they violated no penal law in driving into the premises and stopping the car. The evidence discloses no act of trespass sufficient to sustain an action for damages. They entered by the driveway which was open to the public and apparently, under all of the circumstances, with an implied invitation to the public to use that driveway. If the sheriff and his deputy were not welcome guests there is, nevertheless, ground for construction that they were invited guests.

60 ■■■■■■■

The motion contains further insistence that the prosecuting attorney committed error in referring to the failure of defendant to testify. It is a well settled rule that where the prosecuting attorney refers to the absence of testimony which only the appellant could give this will be construed as a reference to his failure to testify. An analysis of the bill in the instant case, however, shows that the things referred to by the argument took place in the presence of several witnesses in the case and, if incorrect, might have been refuted by either of the several witnesses. It was not a case in which the appellant was the only person who could give the evidence. For this reason we could not construe the argument to be a reference to the failure of the accused to testify. In so expressing ourselves we do not recede from the conclusion in the original opinion, that proper objection was not made to such arguments.

Believing that the case was correctly disposed of, the motion for rehearing is overruled.