## In re SEIZURE OF GAMBLING PROCEEDS AND DEVICES.

### No. 14–06–01092–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 19, 2008.

William T. Green, III, Houston, TX, for appellants.

Alan Curry, April Adams Silva, Houston, TX, for appellees.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

In this case, appellants Abelardo Jasso ("Jasso") and Emerald Coast Exchange ("Emerald Coast") ask us to determine whether, under Article 18.18(b) of the Code of Criminal Procedure, the State's seizure of gambling devices and proceeds must be pursuant to a search warrant before the State may seek forfeiture of the property when the property's possessor was not convicted of an offense. We hold that a search warrant is not required for the State to initiate a forfeiture proceeding under Article 18.18(b) when officers enter a gaming establishment with the owner's consent and there is probable cause for seizure of the property. Therefore, we affirm the trial court's judgment.

## I. Factual and Procedural Background

On February 28, 2006, the City of Galena Park Police Department seized thirty-seven game machines and $9,049.00 in cash from a game room on Federal Road in Galena Park, Harris County, Texas, known as "Abel's Game Room." The following August, the State filed an original petition for forfeiture, claiming that the game machines, commonly known as "eight-liner"

machines, were gambling devices[1] and that the cash was gambling proceeds. The following affidavit, attached to the State's petition, explained the circumstances surrounding the seizure of the property:

My name is Assistant Chief R.D. Bates[.] I am a Peace Officer employed by the Galena Park Police Department. On February 28, 2006, information was received from a reliable source, Joe Ayala, the Chief of Police at the Jacinto City Police Department, that an illegal gambling operation was being run at 1833 Federal Road, Galena Park, Harris County, Texas. I proceeded to that location and approached the front door. The front door was found to be opened but the burglar bar door was shut and locked. Chief R.C. Pruett, with the Galena Park Police Department, called out to get someone to come to the door. Mrs. Palomino, later found to be an employee of the game room, and Mr. Abelardo Jasso, later found to be the owner and operator of the game room, approached the door. Mr. Jasso was asked what was going on at the location and he advised he was running a game room. Chief Pruett asked Mr. Jasso if they could come in and he and Mrs. Palomino unlocked the burglar bars and let them in. Mr. Jasso led the officers

---

1. The Texas Penal Code defines a "gambling device" as:

 any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

 (A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the

 game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

 (B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

 Tex. Penal Code § 47.01(4).

to the back where officers observed approximately twelve patrons playing eight liner machines. Asst. Chief Bates took several individuals from the game room to the Galena Park Police Station and took sworn statements from them regarding the game room. Several of the witnesses stated those who worked in the game room would pay customers in cash. From the investigation it was determined that illegal Gambling Devices were being utilized at the location, a game room known as "Abel's Game Room[."] This is a gambling offense as defined in Chapter 47 of the Texas Penal Code. The thirty-seven (37) Video Gambling Devices, as listed in Attachment "A" and incorporated herein for all intents and purposes, along with the listed monies $9,049.00 in U.S. currency, [were] found inside the said Gambling Devices, inside of bank bags and a cash box all at the location. Since the gambling devices have been in the custody of the Galena Park Police Department Asst. Chief Bates and Galena Park Police Officer J.T. Morton have played all thirty-seven (37) of the devices and all of them pay ou[t] more than ten to one odds. Said location was under the care, custody, and control of Abelardo Jasso, at the previously mentioned location.

In its petition, the State also averred that, after the property was seized, the charge against Jasso for keeping a gambling place was dismissed.

Jasso answered with a general denial and requested that the $9,049.00 be re-

turned to him. Emerald Coast, claiming ownership of the game machines, also answered and requested that the game machines be returned to it.

In October, the trial court held an evidentiary hearing at which Assistant Chief Bates testified to much of the same information that was in his affidavit and provided additional details of the circumstances surrounding the seizure of the property. Bates also was cross-examined by both Jasso and Emerald Coast. No other witnesses were offered by any party. At the conclusion of the testimony, the parties argued whether the forfeiture action was appropriately brought under Article 18.18 of the Code of Criminal Procedure because a search warrant was not obtained before the property was seized. After taking the matter under advisement, the trial court reconvened the hearing and ruled in favor of the State.

On October 23, 2006, the trial court memorialized its ruling in an order directing that the thirty-seven gambling devices and the $9,049.00 in cash were forfeited to the State.[2] On January 25, 2007, the trial court signed a "Final Judgment of Forfeiture" specifically ordering that the gambling devices and currency were forfeited pursuant to Article 18.18 of the Texas Code of Criminal Procedure. This appeal followed.

## II. Analysis of the Issue

In a single issue, Jasso and Emerald Coast contend that the trial court erred in

---

**2.** The October 23 order also contained findings of fact and conclusions of law. The trial court found, among other things, that the testimony offered at the hearing was credible, that Jasso freely and voluntarily permitted the police officers to enter the premises, and the evidence presented supported the factual allegations in the State's original petition for forfeiture as to the nature and character of the eight-liners and the currency seized. In its

conclusions of law, the trial court concluded, among other things, that Jasso freely and voluntarily consented to the request by Chief Pruett to enter the premises, that the devices and currency were lawfully seized, and that the State proved by a preponderance of the evidence that the thirty-seven eight-liners were gambling devices and the currency constituted gambling proceeds.

forfeiting the game machines and cash under Article 18.18(b) of the Code of Criminal Procedure because there was no search warrant. Chapter 18 of the Code, entitled "Search Warrants," provides for the disposition of gambling paraphernalia, prohibited weapons, criminal instruments, and other contraband when, as here, no prosecution or conviction follows the seizure of the property:

> If there is no prosecution or conviction following seizure, the magistrate to whom the return was made shall notify in writing the person found in possession of the alleged gambling device or equipment, altered gambling equipment or gambling paraphernalia, gambling proceeds, prohibited weapon, obscene device or material, child pornography, scanning device or re-encoder, criminal instrument, or dog-fighting equipment to show cause why the property seized should not be destroyed or the proceeds forfeited. The magistrate, on the motion of the law enforcement agency seizing a prohibited weapon, shall order the weapon destroyed or forfeited to the law enforcement agency seizing the weapon, unless a person shows cause as to why the prohibited weapon should not be destroyed or forfeited. A law enforcement agency shall make a motion under this section in a timely manner after the time at which the agency is informed in writing by the attorney representing the state that no prosecution will arise from the seizure.

TEX.CODE CRIM. PROC. art. 18.18(b).

Jasso and Emerald Coast contend that, in *Hardy v. State,* the Texas Supreme Court held that a search warrant is required to precede a forfeiture under Chapter 18 of the Code, citing the following language: "In order to initiate a forfeiture proceeding, the State must obtain a search warrant based on a sworn affidavit averring sufficient facts to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." *See* 102 S.W.3d 123, 127 (Tex.2003). Thus, they argue, because no search warrant was obtained here, the property may not be forfeited under Chapter 18.

The State responds that the language cited in *Hardy* is not dispositive because it is not the holding of the case, but is merely an explanation of the usual manner in which gambling devices or proceeds are forfeited under Article 18.18. Further, the State contends, no search warrant was required in this case because the officers had consent to enter the game room, and the State demonstrated that it had probable cause to seize the property. As we explain below, we agree with the State.

### A. The *Hardy* Case Does Not Hold that a Warrant is Required

In *Hardy v. State,* the State seized twenty eight-liner machines while executing a search warrant at the Hardys' place of business. *Id.* at 124. The Hardys filed a petition for the return of the machines, but after an evidentiary hearing, the trial court found that the seized eight-liners were illegal gambling devices and ordered their forfeiture. *Id.* at 124–25. The court of appeals affirmed the trial court's judgment. *Id.* at 125. On review, the issues before the Supreme Court were (1) which party bears the burden of proof in a civil forfeiture proceeding involving alleged gambling devices, and (2) whether an eight-liner that awards tickets exchangeable for either gift certificates or cash used for play on another machine satisfies the exclusion to the definition of "gambling device" in section 47.01(4)(B). *See id.*

Addressing the first issue concerning which party has the burden of proof, the *Hardy* Court began by explaining that a civil forfeiture proceeding under Chapter 18 of the Code of Criminal Procedure is an

in rem proceeding against the property itself, not the owner, and does not involve the conviction of the owner or possessor of the property seized. *Id.* at 126–27. The Court went on to explain:

> A forfeiture proceeding begins when the State presents an affidavit to a magistrate and ends after a show cause hearing in which the magistrate determines whether the seized property should be destroyed or forfeited. In order to initiate a forfeiture proceeding, the State must obtain a search warrant based on a sworn affidavit averring "sufficient facts . . . to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." TEX. CODE CRIM. PROC. art. 18.01(b). The affidavit underlying the search warrant is public information, and the magistrate's clerk must make a copy of the affidavit available for public inspection. *Id.* After the magistrate issues the search warrant, the State executes the warrant by conducting a search and seizure of the property. *Id.* arts. 18.06, .09.

*Id.* at 127. This language was not a part of the holding of *Hardy*. It was simply a discussion of the procedures generally followed in a forfeiture action under Article 18.18.

In resolving the issue before it, the *Hardy* Court's holding was that, under the statutory scheme in Article 18, the State's initial burden is satisfied to the extent it establishes probable cause for seizing the person's property. *Id.* at 129. The Court went on to explain that, "[o]nce the State has established probable cause to initiate a forfeiture proceeding, the State has met its burden under article 18" and the burden then shifts to the claimant to prove that the property is not subject to forfeiture under Article 18.18(f).[3] *Id.* The *Hardy* case did not purport to address the situation in which alleged contraband is seized without a warrant and the State subsequently seeks to have that contraband forfeited.

■ Here, the eight-liners and cash were properly recovered after the officers entered the business with Jasso's voluntary consent. *See Gutierrez v. State*, 221 S.W.3d 680, 688 (Tex.Crim.App.2007) (holding that consent exception to warrant requirement applied when appellant voluntarily consented to officers' entry and search of home); *State v. Haley*, 811 S.W.2d 597, 599–600 (Tex.Crim.App.1991) (employees gave investigator and officer consent to enter business, and contraband evidence was then properly seized under "plain view" doctrine). The consent exception to the warrant requirement has been applied in at least two cases involving earlier versions of the statutes covering the seizure and forfeiture of gambling devices. *See Meador v. State*, 151 Tex.Crim. 53, 204 S.W.2d 628, 631 (1947) (holding that lack of search warrant did not make evidence of gambling inadmissible when officers searched appellant's residence with appellant's consent or invitation); *San Angelo Country Club v. State*, 210 S.W.2d 855, 857

---

**3.** Article 18.18(f) provides:

> If a person timely appears to show cause why the property or proceeds should not be destroyed or forfeited, the magistrate shall conduct a hearing on the issue and determine the nature of property or proceeds and the person's interest therein. Unless the person proves by a preponderance of the evidence that the property or proceeds is not gambling equipment, altered gam-

bling equipment, gambling paraphernalia, gambling device, gambling proceeds, prohibited weapon, obscene device or material, child pornography, criminal instrument, scanning device or re-encoder, or dog-fighting equipment and that he is entitled to possession, the magistrate shall dispose of the property or proceeds in accordance with Paragraph (a) of this article.

TEX.CODE CRIM. PROC. art. 18.18(b).

(Tex.Civ.App.-Austin 1948, no pet) (holding seizure of gambling devices without search warrant was legal when custodian consented to officers' entry by voluntarily unlocking game room and showing officers the machines).

Here, Jasso does not dispute that he voluntarily consented to the officers' entry and directed them to the back of the game room where customers were playing the eight-liner machines. Thus, no warrant was required because the officers entered the game room with Jasso's voluntary consent.

### B. Neither Chapter 18 Nor Article 18.18(b) Mandate a Search Warrant

Further, we do not agree with Jasso and Emerald Coast that, under Article 18.18(b), the lack of a search warrant precludes the State from seeking the forfeiture of illegal property. Nothing in the language of Chapter 18 or Article 18.18 mandates that the State obtain a warrant before it may initiate a forfeiture action, and to hold otherwise would be contrary to the intent and purpose behind the article.

### 1. Standard of Review

The construction of a statute is a question of law, which we review de novo. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex.2007). In construing a statute, our primary objective is to determine the Legislature's intent, which, when possible, we discern from the plain meaning of the words chosen. *State v. Shumake,* 199 S.W.3d 279, 284 (Tex. 2006); *see also State v. Silver Chevrolet Pickup* 140 S.W.3d 691, 693–94 (Tex.2004) (per curiam) (on review of civil forfeiture proceeding under Texas Code of Criminal Procedure Chapter 59, stating that the "most important rule of statutory construction" is "that the court must give effect to legislative intent" and the principle that forfeitures are strictly construed

does not prevent a court from considering the purpose of a statutory provision). We presume that every word of a statute was used for a purpose, and, likewise, that every word excluded was excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). We must consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 398 (Tex.2000).

■ In determining legislative intent, we may examine old law, the evil to be corrected, and the object to be obtained. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 629 (Tex.1996); *see also* TEX. GOV'T CODE § 311.023. We presume the Legislature intended a just and reasonable result by enacting the statute. *Helena Chem. Co.,* 47 S.W.3d at 493; TEX. GOV'T CODE § 311.021(3). Courts should not read a statute to create an absurd result. *Barshop,* 925 S.W.2d at 629; *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 135 (Tex.1994) (Hecht, J., concurring) ("[I]n some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended."); *McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691, 698 (1955) ("Unless there is no alternative, a statute will not be interpreted so as to lead to a foolish or absurd result."). When a statute is silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences. *Helena Chem. Co.,* 47 S.W.3d at 494.

### 2. Chapter 18 and Article 18.18(b)

We acknowledge that Chapter 18 contemplates the issuance of a search warrant and describes the procedures to be followed when a search warrant is sought to

permit a law enforcement agency to seize certain property or persons. *See* TEX. CODE CRIM. PROC. art. 18.01 (requirements for search warrant); art. 18.02 (grounds for issuance of search warrant); art. 18.04 (contents of warrant); art. 18.06 (execution of warrant); art. 18.09 (directing officer to search for and seize property and arrest persons as directed by the warrant and take the property or person to the magistrate). And, Chapter 18 includes gambling devices and proceeds among the types of property that may be seized pursuant to a search warrant. *See id.* art. 18.02(5) ("A search warrant may be issued to search for and seize ... gambling devices or equipment, altered gambling equipment, or gambling paraphernalia.").

▪ Article 18.01 provides, "[n]o search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." *Id.* art. 18.01(b). This requirement is consistent with the *Hardy* court's holding that, in a forfeiture action under Article 18.18, the State must satisfy a threshold burden to establish probable cause before the burden of proof shifts to the claimant of the property to demonstrate that the property is not subject to forfeiture. *See Hardy*, 102 S.W.3d at 129–30. This requirement also is consistent with the stated goals of our search warrant law, namely (1) to ensure that there is adequate probable cause to search, and (2) to prevent the mistaken execution of the warrant against an innocent third party. *See Bridges v. State*, 574 S.W.2d 560, 562 (Tex.Crim.App.1978). However, Chapter 18 contains no language requiring that a search warrant issue before property may be seized or persons may be arrested pursuant to its provisions, and it does not prohibit the forfeiture of property obtained through a proper search and seizure con-ducted without a warrant when the State has demonstrated probable cause. Nor does Chapter 18 provide for any penalty for failing to obtain a warrant.

▪ Similarly, Article 18.18(b), in setting out the procedures to be followed in a forfeiture action when there is no prosecution or conviction following the seizure of property, imposes no warrant requirement on the State. We acknowledge that Article 18.18(b) contains some language that presupposes the execution of a search warrant before the forfeiture proceeding is initiated. *See* TEX.CODE CRIM. PROC. art. 18.18(b) (providing that, when there is no prosecution or conviction following seizure, "the magistrate *to whom the return was made* shall notify in writing the person found in possession of the alleged gambling device ... [or] gambling proceeds ... to show cause why the property seized should not be destroyed or the proceeds forfeited") (emphasis added). However, Article 18.18(b) contains no language requiring that a warrant have been executed before the State may initiate a forfeiture action. Nor does it expressly prohibit the State from seeking forfeiture if no warrant was obtained or otherwise penalize the State for failing to obtain a warrant. It merely sets out the procedures for notice and the opportunity for a hearing to allow persons who were not prosecuted for or convicted of one of the offenses listed in Article 18.18(a) to demonstrate that the property or proceeds seized should not be destroyed or forfeited. *See id.* art. 18.18(b)-(f); *State v. Dugar*, 553 S.W.2d 102, 104 (Tex.1977) (determining legislative intent to be that Article 18.18(b)-(f) provide the authority for forfeitures in all cases not covered by Article 18.18(a)); *Burnom v. State*, 55 S.W.3d 752, 753–54 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (applying reasoning of *Dugar* to hold that when property owner was convicted of

an offense not enumerated in Article 18.18(a), the contraband may be forfeited under the authority of Article 18.18(b)).

The apparent intent of the Legislature in enacting Chapter 18 was to provide for the seizure of certain illegal property and the arrest of criminally responsible persons through the use of a properly obtained search warrant to enforce the law and to protect the general public from criminal enterprises. Consistent with this intent, Article 18.18 is directed specifically to the disposition of gambling paraphernalia, prohibited weapons, criminal instruments, and other contraband. Under Article 18.18(a), if a person is convicted of possession of a gambling device or equipment (or one of the other enumerated offenses), the judgment of conviction is to be accompanied by an order that the related property be destroyed or forfeited to the State. *See* Tex.Code Crim. Proc. art. 18.18(a).[4] Article 18.18(b) authorizes the

State to seek forfeiture of illegal gambling devices and proceeds even when no conviction of a person is obtained, but it provides a procedure by which the possessor of the alleged gambling devices or proceeds may demonstrate that the property should not be forfeited. The intent reflected in these provisions is to remove from society the instrumentalities and proceeds of criminal enterprises. *See Dugar*, 553 S.W.2d at 104 (broadly construing Article 18.18(b)-(f) to apply to more situations than the literal language suggested, because to do otherwise "would be contrary to the basic premise of an in rem forfeiture proceeding that, while the possessor may not be guilty of any criminal offense, the property seized is of such a nature that it should be destroyed or confiscated by the State."). Further, the State is prevented from removing such property from society only when a person not convicted or prosecuted of an offense under Article 18.18(a) is able

---

**4.** Article 18.18 provides as follows:

(a) Following the final conviction of a person for possession of a gambling device or equipment, altered gambling equipment, or gambling paraphernalia, for an offense involving a criminal instrument, for an offense involving an obscene device or material, for an offense involving child pornography, or for an offense involving a scanning device or re-encoder, the court entering the judgment of conviction shall order that the machine, device, gambling equipment or gambling paraphernalia, instrument, obscene device or material, child pornography, or scanning device or re-encoder be destroyed or forfeited to the state. Not later than the 30th day after the final conviction of a person for an offense involving a prohibited weapon, the court entering the judgment of conviction on its own motion, on the motion of the prosecuting attorney in the case, or on the motion of the law enforcement agency initiating the complaint on notice to the prosecuting attorney in the case if the prosecutor fails to move for the order shall order that the prohibited weapon be destroyed or forfeited to the

law enforcement agency that initiated the complaint. If the court fails to enter the order within the time required by this subsection, any magistrate in the county in which the offense occurred may enter the order. Following the final conviction of a person for an offense involving dog fighting, the court entering the judgment of conviction shall order that any dog-fighting equipment be destroyed or forfeited to the state. Destruction of dogs, if necessary, must be carried out by a veterinarian licensed in this state or, if one is not available, by trained personnel of a humane society or an animal shelter. If forfeited, the court shall order the contraband delivered to the state, any political subdivision of the state, or to any state institution or agency. If gambling proceeds were seized, the court shall order them forfeited to the state and shall transmit them to the grand jury of the county in which they were seized for use in investigating alleged violations of the Penal Code, or to the state, any political subdivision of the state, or to any state institution or agency.

Tex.Code Crim. Proc. art. 18.18(a).

to demonstrate that such property should not be destroyed or forfeited. Nothing in Chapter 18, and more specifically Article 18.18(b), reflects a legislative intent to deny the State the ability to seek forfeiture of allegedly illegal property merely because that property was properly obtained by a recognized exception to the general requirement of a search warrant.

To construe Article 18.18(b) to preclude the State from seeking forfeiture of gambling devices in this case merely because the officers entered with voluntary consent rather than a search warrant would conflict with a legislative intent to authorize the State to confiscate or destroy illegal gambling devices and proceeds. *See* TEX. CODE CRIM. PROC. art. 18.18; *Dugar*, 553 S.W.2d at 104 (rejecting narrow interpretation of Article 18.18(b)-(f) to apply only to situations where there is no conviction for any offense because then funds that were clearly gambling proceeds could not be forfeited solely because the State obtained a conviction for an offense that was not among those listed in Article 18.18(a)). Indeed, not only would such a conclusion conflict with the legislative intent of the article, it would produce an absurd result, because it would require officers to obtain a search warrant when none was required solely to preserve the State's ability in the future to seek forfeiture of the illegal property in the event the possessor of the property is not convicted of an offense under Article 18.18(a) or any offense at all. We are to avoid construing a statute to create an absurd result. *See Barshop*, 925 S.W.2d at 629; *Bridgestone/Firestone, Inc.*, 878 S.W.2d at 135 (Hecht, J., concurring); *McKinney*, 282 S.W.2d at 698.

Therefore, we conclude that the Legislature did not intend to preclude the State from seeking forfeiture of gambling devices and proceeds under Article 18.18(b) when the property was seized after the officers obtained the possessor's voluntary consent to enter and the possessor directed the officers to the gambling devices. *See Gutierrez*, 221 S.W.3d at 688; *Haley*, 811 S.W.2d at 599–600; *Meador*, 204 S.W.2d at 631; *San Angelo Country Club*, 210 S.W.2d at 857; *see also State v. Rumfolo*, 545 S.W.2d 752, 755 (Tex.1976), *disapproved on other grounds by Hardy v. State*, 102 S.W.3d 123 (Tex.2003) (in action by State for forfeiture of gambling proceeds under Article 18.18(b), holding trial court had sufficient evidence before it to conclude there was probable cause for arrests and subsequent searches even though search warrant was not in evidence).

## C. The State Demonstrated Probable Cause

█ Jasso and Emerald Coast argue that, because there was no search warrant, there cannot, as a matter of law, be probable cause for the seizure of the game machines and cash. However, as we have already held, a search warrant was not required because the officers entered the game room where the machines were located with Jasso's voluntary consent. Although Jasso and Emerald Coast do not otherwise challenge whether the State established probable cause, we agree with the trial court that the State established probable cause in this case.

█ After the eight-liners and cash were properly recovered, the State then sought, through its original petition and affidavit, to have that property forfeited. As the *Hardy* court held, in a forfeiture action under Article 18, the State must satisfy its threshold burden to establish probable cause before the burden of proof shifts to the claimant of the property to demonstrate that the property is not subject to forfeiture. *See Hardy*, 102 S.W.3d at 129–30. Probable cause is a reasonable belief that a substantial connection exists

between the property to be forfeited and the criminal activity defined by the statute. *Id.* at 129 (citations omitted). It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property. *Id.* (citations omitted).

Assistant Chief Bates said he was told by the Chief of Police at the Jacinto City Police Department that an illegal gambling operation was being run at a location on Federal Road in Galena Park. When Bates went to the location, which was a game room known as "Abel's Game Room," he found the front door open but the burglar bar door shut and locked. Chief Pruett, who accompanied Bates, called for someone to come to the door, and Jasso and an employee of the game room approached the door. When asked what was going on inside, Jasso stated that he was running a game room. Pruett then asked if they could come in, and Jasso and the employee unlocked the burglar bars and allowed them to enter. Jasso then led the officers to the back where approximately twelve patrons were playing the eight-liner machines. In his affidavit, Bates stated that this was a gambling offense as defined in Chapter 47 of the Texas Penal Code. The officers also found $9,049.00 in U.S. currency in the eight-liners and other places at the location. Bates testified at the hearing that he and Pruett interviewed some of the patrons, who told the officers that they were being paid in cash, sometimes as much as $500.00. They also stated that they would win prizes including a 42-inch plasma TV, computers, and CD players. Once the patrons told him they had been paid in cash of more than five dollars, Bates believed the machines were gambling devices.

Assistant Chief Bates established a substantial connection between the property to be forfeited and the criminal activity defined by the statute, in his affidavit and through his testimony at the hearing, thereby establishing probable cause for the State to seize the eight-liners and the cash. Further, Jasso and Emerald Coast do not claim that the gaming machines and cash seized are not gambling devices and proceeds. Therefore, the trial court did not err in ordering forfeiture of the property.

**Conclusion**

We overrule appellants' issue and affirm the judgment of the trial court.