

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00391-CV

$1760.00 IN UNITED STATES          APPELLANT
CURRENCY, 37 "8" LINER
MACHINES

V.

THE STATE OF TEXAS          APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

## OPINION

----------

## I. INTRODUCTION

This is a civil forfeiture case. Appellant Sammy Dean Barnes, owner of Magic Games Game Room, appeals the trial court's order forfeiting $1,760.00 in United States currency and thirty-seven "eight-liner" machines to the State as gambling proceeds and gambling devices. We are asked to address an issue of first impression: whether a nonimmediate right of replay—by means of

redeeming a ticket of no cash value for points electronically input from a central location to an eight-liner chosen by the ticket holder at Magic Games Game Room at a subsequent visit—prohibits application of the "fuzzy animal"[1] exclusion from the definition of "gambling device."  *See* Tex. Penal Code Ann. § 47.01(4) (defining "gambling device"), § 47.01(4)(B) (West 2011) (setting forth "fuzzy animal" exclusion from the definition of "gambling device").  Because we hold that the redemption of tickets for points used for replay provided by Magic Games Game Room does not prohibit application of the "fuzzy animal" exclusion from the definition of "gambling devices," we will reverse the trial court's order forfeiting the thirty-seven eight-liner machines seized from Magic Games Game Room.

## II. Factual and Procedural Background

The Tarrant County Sherriff's Department commenced an investigation of Magic Games Game Room on January 24, 2011.  Deputy Jeffrey Jones stopped two individuals leaving the game room to investigate whether gambling was occurring in the game room:  Mr. Skelley, a gentleman in his eighties, and Mr. Coolidge, a ninety-nine-year-old gentleman.  Mr. Skelley told Deputy Jones that the game room did not pay cash; instead, players received tickets that could be redeemed for prizes or for replays on that day or a later date.  Mr. Coolidge told

---

[1]*See Fifty Six (56) Gambling Devices v. State*, No. 07-03-00132-CV, 2004 WL 635429, at *2 (Tex. App.—Amarillo 2004, no pet.) (on reh'g) (noting that penal code section 47.01(4)(B) is "commonly known as the fuzzy animal exception").

Deputy Jones that the game room did not pay cash but that winning players received tickets that could be redeemed for prizes or for replays at any time.

The eight-liners[2] at Magic Games Game Room accepted one-, five-, ten-, and twenty-dollar bills and converted the money into points that were played on the machines; it took at least one dollar to start playing. The machines did not allow patrons to win in excess of ten times the value of their bets. When a patron would "ticket out," a central ticket machine would dispense a ticket, which had no cash value—one ticket for every 500 points that the patron had accumulated on the machine. Patrons would occasionally ticket out in order to play a different machine they believed to be more lucky; an attendant would take the patron's tickets and, from a central location, electronically transfer the points represented by the tickets to the machine the patron desired to play. Likewise, the right of replay was implemented electronically; patrons surrendered their tickets, and the points represented by the tickets were applied electronically to whichever machines the patrons wanted to play.[3] Patrons also had the option to use their

---

[2]The term "eight-liner" is a generic term; some of the machines at the Magic Games Game Room had five, eight, ten, or twenty lines that could be played. The record reveals that winnings were determined by matching symbols horizontally, vertically, or diagonally and that a patron could choose how many lines he wanted to play.

[3]Barnes testified that there were eight or ten eight-liner machines at Magic Games Game Room that could not be used for replay because they would not receive the electronic points properly. Patrons could therefore redeem their ticket for replay only on certain machines that would allow electronic transfer of points to the machine.

tickets to "buy" a gift, such as toilet paper, paper towels, or coffee; if there were no gifts that the patron wanted, he could bring his tickets back on a different day to choose a gift. None of the gifts were in excess of five-dollar wholesale value.

Deputy Jones prepared an affidavit to obtain a warrant to search Magic Games Game Room for gambling devices. Jones's affidavit stated,

> Based on the information obtained during the investigative stops, Barnes is giving tickets to patrons, allowing them to come back at a later date and redeem said ticket for machine credits. Thus he is allowing patrons to leave and return to play on another day by thus a violation of the law.

Deputy Jones presented his search warrant affidavit to a magistrate, obtained a search warrant, executed the warrant at Magic Games Game Room, and seized thirty-seven eight-liner machines. While at Magic Games Game Room, Deputy Jones observed that none of the prizes, which he described as "[g]rocery store items," exceeded a five-dollar monetary value. Deputy Jones also noted a sign on the wall that stated, "We do not pay cash. Tickets have no cash value. Tickets are redeemable for gifts or replay only. If you ask for cash, you will be asked to leave."

The State initiated forfeiture proceedings in the justice court,[4] and the justice court ordered the forfeiture of the thirty-seven eight-liner machines, along

---

[4]The State's motion for forfeiture, which is described in the order, is not in the record before us.

with $1,760.00 in currency.[5]   Barnes appealed the justice court judgment to the county court at law,[6] and following a bench trial, the county court at law ordered the forfeiture of the thirty-seven eight-liner machines, along with $1,760.00 in currency.  This appeal followed.

### III.  APPLICATION OF THE "FUZZY ANIMAL" EXCLUSION FROM THE DEFINITION OF GAMBLING DEVICES

In his sole issue, Barnes argues that the trial court erred by granting the State's motion for forfeiture because Magic Games Game Room's eight-liner machines were not gambling devices.  Specifically, Barnes argues that the allowance of a nonimmediate right of replay by means of redeeming a ticket of no cash value at a subsequent visit by electronically applying the points represented by the ticket to whichever machine the ticket-holder patron desired to play does not prevent application of the "fuzzy animal" exclusion set forth in Texas Penal Code section 47.01(4)(B).  The State argues that this future right of replay vitiates application of the "fuzzy animal" exclusion to the eight-liner machines seized from Magic Games Game Room.

### A.  Procedure in Civil Forfeiture Case

Following lawful seizure, gambling paraphernalia, devices, equipment, and proceeds are subject to forfeiture even when, as here, there is no prosecution of

---

[5]The money was retrieved from an ATM machine that was on the premises, but Barnes testified that the ATM machine did not belong to him.

[6]The record before us does not contain Barnes's filings in the county court at law other than a motion to suppress and exclude evidence.

5

the owner of the contraband.  *See* Tex. Code Crim. Proc. Ann. art. 18.18(b) (West Supp. 2011); *In re Seizure of Gambling Proceeds & Devices*, 261 S.W.3d 439, 446 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  Once the State has established probable cause to initiate a forfeiture proceeding, the State has met its burden under article 18.  *Hardy v. State*, 102 S.W.3d 123, 129 (Tex. 2003).  At that point, the burden shifts to the claimant to prove that the property is not subject to forfeiture under article 18.18(f), which provides that, "[u]nless the [interested person] proves by a preponderance of the evidence that the property or proceeds is not gambling equipment . . . the magistrate shall dispose of the property or proceeds . . . ."  Tex. Code Crim. Proc. Ann. art. 18.18(a), (f) (West Supp. 2011); *Hardy*, 102 S.W.3d at 129.  Thus, the ultimate burden of proof in an article 18.18 forfeiture proceeding is on the possessor of the property, not the State. *Hardy*, 102 S.W.3d at 129–30.

## B.  Challenge to Trial Court's Conclusion of Law

Rule 296 of the Texas Rules of Civil Procedure authorizes requests for findings of fact and conclusions of law in a nonjury case.  Tex. R. Civ. P. 296. Neither party requested findings of fact or conclusions of law; the evidence, however, is undisputed.  Barnes and the State both contend that the same, undisputed facts compel different conclusions of law.  The State contends that the evidence establishes that the eight-liners at issue do not fall within the "fuzzy animal" exclusion set forth in penal code section 47.01(4)(B); Barnes contends that the same evidence establishes that they do.  We review the trial court's legal

6

conclusions drawn from facts to determine their correctness. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 277 (Tex. App.—Fort Worth 2002, no pet.). Thus, we review de novo here whether the trial court erred by concluding, based on the undisputed evidence, that the thirty-seven eight-liners seized from Magic Games Game Room did not fall within subsection (B)'s exclusion to the general definition of "gambling devices" set forth in section 47.01(4) of the Texas Penal Code.

### C. Definition of Gambling Device and "Fuzzy Animal" Exclusion from Definition of Gambling Device

Section 47.01 of the Texas Penal Code sets forth the following definition of gambling device:

> (4) "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:
>
> (A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and
>
> (B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device

7

of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

Tex. Penal Code Ann. § 47.01(4). Section (4), as quoted above, sets forth the general definition of gambling device, and subsection (B) sets forth the statutory exclusion from the definition. *See Hardy*, 102 S.W.3d at 131. A "thing of value" as referred to in the definition of "gambling device" in section (4) is defined as meaning "any benefit, but does not include an unrecorded and immediate right of replay not exchangeable for value." *Id.* § 47.01(9) (West 2011).

## D. Statutory Construction

We review issues of statutory construction de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In construing statutes, our primary objective is to give effect to the Legislature's intent. *Id*. (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Id*. We presume that the legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *Id*. (citing *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008)). Courts should give effect to "every sentence, clause, and word of a statute so that no part thereof [will] be rendered superfluous." *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 29 (Tex. 2003) (quoting *Spence v. Fenchler,* 107 Tex. 443, 457, 180 S.W. 597, 601 (1915)).

8

## E. Analysis

Barnes concedes that because the tickets that patrons received when they "ticketed out" of the eight-liners could be redeemed electronically for points input to an eight-liner at a subsequent visit and thereby could be used for a nonimmediate right of replay, the eight-liners fall within the definition of a gambling device set forth in penal code section 47.01(4). *See* Tex. Penal Code Ann. § 47.01(4); *State v. Gambling Paraphernalia, Devices, Equip. & Proceeds*, 356 S.W.3d 594, 598 (Tex. App.—Corpus Christi 2011, no pet.) (holding eight-liners met section 47.01(4)'s general definition of gambling device because player obtained nonimmediate right of replay via credits on a player card); *Allstar Amusement v. State*, 50 S.W.3d 705, 707–08 (Tex. App.—Waco 2001, no pet.) (holding eight-liners met section 47.01(4)'s general definition of gambling device because player obtained nonimmediate right of replay by returning at a later date and presenting ticket to attendant who put $5.00 in the selected machine). That is, Barnes concedes that because the eight-liners afford the player an opportunity to obtain a "thing of value"—a benefit other than an unrecorded and immediate right of replay, that being a right of nonimmediate replay, the eight-liners meet the definition of gambling device set forth in section 47.01(4). *See Gambling Paraphernalia, Devices, Equip. & Proceeds*, 356 S.W.3d at 598; *Allstar Amusement,* 50 S.W.3d at 707–08. Barnes argues, however, that even if a device meets the section 47.01(4)'s general definition of a gambling device, it is specifically excluded from that definition if it meets the requisites of the "fuzzy

animal" exclusion set forth in subsection (B).  *See* Tex. Penal Code Ann. § 47.01(4) (defining gambling device as "any electronic, electromechanical, or mechanical contrivance *not excluded under paragraph (B)* that . . .") (emphasis added); *Hardy,* 102 S.W.3d at 131 (explaining, "the Hardys do not contend that the seized eight-liners are not gambling devices under the general definition in 47.01(4)[;] [i]nstead, they contend that their eight-liners fall within the exclusion provided in section 47.01(4)(B)").

Barnes claims that the eight-liners here meet the requisites of the "fuzzy animal" exclusion set forth in subsection (B) because they were designed, made, and adapted solely for bona fide amusement purposes and reward a player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items.  *See* Tex. Penal Code Ann. § 47.01(4)(B).[7]   The State argues, however, that a player's ability to redeem tickets on a return visit not only to obtain gifts available at Magic Games Game Room but also to obtain points electronically input on an eight-liner and thereby get to replay without depositing any more money into a machine is a reward not itemized in subsection (B) that causes subsection (B) to be inapplicable here.

---

[7]The record before us conclusively establishes that the gifts available to patrons at Magic Games Game Room in exchange for their tickets did not violate the  not-more-than-ten-times-the-amount-charged-to-play-the-game-once-or-five-dollar provision of subsection (B).

Thus, again, the sole question presented here is whether a nonimmediate[8] right of replay—by means of redeeming a ticket of no cash value for points electronically input from a central location to an eight-liner chosen by the ticket holder at a subsequent visit—prohibits application of the "fuzzy animal" exclusion from the general definition of gambling device. This is an issue of first impression. Two appellate court cases have addressed whether a nonimmediate right of replay constitutes a "thing of value" for purposes of determining whether an eight-liner meets section 47.01(4)'s general definition of gambling device, but those cases have not addressed whether a nonimmediate right of replay precludes application of the "fuzzy animal" exclusion set forth in subsection (B). *See Gambling Paraphernalia, Devices, Equip. & Proceeds*, 356 S.W.3d at 598– 99 (holding nonimmediate right of replay was thing of value causing eight-liners to meet section 47.01(4)'s general definition of gambling device but holding subsection (B) inapplicable on another ground, that being because the value of the points awarded exceeded the not-more-than-ten-times-the-amount-charged-to-play-the-game-once-or-five-dollar provision of subsection (B)); *Allstar Amusement,* 50 S.W.3d at 707–08 (holding nonimmediate right of replay was

---

[8]The State characterizes the right of replay at issue here as being both *recorded* and nonimmediate. We need not decide whether the nonimmediate right of replay here was recorded or unrecorded, however, because to avoid being a thing of value, the right of replay must be both unrecorded and immediate. *See* Tex. Penal Code Ann. § 47.01(9). Here, it is undisputed that the right of replay was nonimmediate and that the right of replay here is thus not excluded from the definition of "thing of value."

thing of value causing eight-liners to meet section 47.01(4)'s general definition of gambling device and not addressing application of subsection (B) because Allstar did not raise it). The only case to address the application of subsection (B)'s exclusion from the general definition of gambling device set forth in section 47.01(4) is the Texas Supreme Court case of *Hardy*. 102 S.W.3d at 129.

In *Hardy,* the supreme court held that eight-liners that awarded tickets redeemable "for gift certificates or for cash to play other machines" did not fall within subsection (B)'s exclusion from the definition of gambling device. The supreme court noted that *Webster's Dictionary* defined "cash" as "money or its equivalent paid immediately or promptly after purchasing" and held that because the gift certificates awarded were "used as a medium of exchange at various retail outlets," they were an equivalent of money. *Id.* at 131 (noting that the five-dollar gift certificates "may be used in precisely the same manner as five-dollar bills"). The supreme court concluded that "[i]f . . . the reward operates in the same manner as legal tender in a retail establishment, it does not qualify as a noncash merchandise prize, toy[,] or novelty item." *Id.* at 132. Concerning the right of replay, the supreme court held that because a player could exchange his or her tickets not only for gift cards but also for cash, which an attendant would insert into a machine for the player, subsection (B) was not applicable. *Id*. ("This practice of exchanging tickets for cash also removes the machines from the section 47.01(4)(B) exclusion."); *see also State v. One Super Cherry Master Video 8-Liner Machine*, 102 S.W.3d 132, 133 (Tex. 2003) (applying *Hardy* and

12

holding tickets redeemable for cash do not meet the gambling device exclusion under section 47.01(4)(B)). The supreme court in *Hardy* explained,

> While additional play in itself is not proscribed, when that additional play is accomplished by providing cash to play other machines, the statutory exclusion is not satisfied. The exclusion requires that the machine at issue reward the player "*exclusively* with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items. . . . Under the statute, once cash is awarded, it does not matter whether the player deposited the cash directly into the machine or whether an attendant performed this task. Cash to be used for play on another machine is not a noncash merchandise prize, toy or novelty. If tickets are exchanged for cash, regardless of whether that cash is used to play another machine, the exclusion does not apply. We leave open the possibility that additional play through some other method may not violate section 47.01(4). But in this case, the machines did not reward the players with representations of value redeemable for *noncash* merchandise prizes.

102 S.W.3d at 132 (emphasis in original).

The evidence establishes that at Magic Games Game Room, unlike the scenario in *Hardy*, the tickets that winning players obtain when their points are ticketed out for redemption or when their points are ticketed out for play on another machine are never redeemable for cash or for gift certificates that could be used as a medium of exchange at retail outlets. At Magic Games Game Room, no cash is used to credit points to another machine; an attendant electronically transfers points from a central location. Thus, Barnes contends that the cash-focused analysis of the right of replay in *Hardy* does not apply here. We agree. The supreme court in *Hardy* repeatedly articulated, as quoted above, that it was the *provision of cash* that violated subsection (B)—specifically

13

subsection (B)'s requirement that rewards be limited to *noncash* merchandise prizes, toys, or novelties—and not the right of nonimmediate replay that violated subsection (B). *Id*. (explaining, "additional play in itself is not proscribed"). Having determined that *Hardy* does not preclude application of subsection (B)'s exclusion to gambling devices that provide tickets that a patron may opt at a subsequent visit to redeem for noncash points, electronically input from a central location to an eight-liner of the ticket holders' choice—a nonimmediate right of replay—we next conduct a statutory construction analysis.

In determining whether the nonimmediate right of replay here vitiates application of subsection (B)'s exclusion from the definition of gambling devices, we rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n*, 325 S.W.3d at 635. The plain language of section (4) and of subsection (B) exempts from the general definition of gambling device "any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." *See* Tex. Penal Code Ann. § 47.01(4) (stating "Gambling device" means "any electronic, electromechanical, or mechanical contrivance *not excluded under Paragraph (B)*") (emphasis added); § 47.01(4)(B) (exempting contrivances rewarding player exclusively with noncash

14

merchandise, prizes, toys, or novelties, or a representation of value redeemable for those items).  Two aspects of the plain language of the text lead us to hold that the nonimmediate right of replay here does not vitiate application of subsection (B)'s exclusion from the definition of gambling device:  the legislature's use of the undefined term "novelties" in subsection (B) and its use of the phrase "not excluded under Paragraph (B)" in section 47.01(4).  *See Tex. Lottery Comm'n*, 325 S.W.3d at 635 (instructing us that we are to "presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind").

In enacting the "fuzzy animal" exclusion to penal code section 47.01(4)'s definition of gambling device, the legislature chose to exempt gambling devices if the gambling device rewards players exclusively with noncash merchandise prizes, toys, or "novelties," or a representation of value redeemable for those items.  Tex. Penal Code Ann. § 47.01(4)(B).  In his testimony at trial, Barnes classified the right of replay, which a Magic Games Game Room patron could choose to obtain by redeeming a ticket for points that were electronically transferred from a central location to a machine chosen by the patron, as a novelty.  The term "novelties" is not defined in the statute, but *Webster's Dictionary* defines "novelty" as being "a new or unusual thing or event." *Webster's Third New Int'l Dictionary* 1546 (2002); *accord Hardy*, 102 S.W.3d at 131 (applying *Webster*'s definition of "cash" to penal code section 47.01(4)(B)). Utilizing the plain meaning of the term "novelty" as a "new event," we hold that

15

tickets of no cash value that are optionally redeemable at a subsequent visit for points electronically input from a central location to an eight-liner of the ticket holder's choice is a novelty and is thus within the rewards authorized by subsection (B).  *Accord Hardy*, 102 S.W.3d at 132 (explaining that "additional play in itself is not proscribed").

The State argues that "[t]he safe harbor of the fuzzy-animal exception requires that the machine award the player '*exclusively* with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items'" and that "[a] recorded right of future replay is not a prize, toy[,] or novelty necessary to meet the exception."  As set forth above, an optional, noncash, right to redeem tickets for points electronically input from a central location to an eight-liner of the ticket holder's choice is a novelty—a new event—giving the word novelty its plain meaning.  Moreover, if the legislature had intended that subsection (B)'s exclusion be inapplicable to all gambling devices that provide tickets of no cash value that may be presented at a subsequent visit to obtain electronically input points to be used to replay a machine, it could have simply used the defined term "thing of value" in subsection (B) to make subsection (B) applicable only if the *things of value* obtainable were exclusively noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items—thus, incorporating the defined term "thing of value" into subsection (B) to remove the possibility that a nonimmediate right of replay could be considered a novelty.  *See Tex. Lottery Comm'n*, 325 S.W.3d at 635

16

(explaining that a court does not rely on plain meaning [here of the word "novelty"] as expressing legislative intent when a different meaning [here no different meaning is provided, but could have been by using the defined term "thing of value"] is supplied by legislative definition).  But the legislature limited its use of the defined term "thing of value"—defining a nonimmediate right of replay as a thing of value—to the definition of gambling device set forth in section 47.01(4)'s general definition, and we must presume the legislature made this word choice with a purpose in mind.  *See Tex. Lottery Comm'n*, 325 S.W.3d at 635.

Finally, we note that the plain language of section 47.01(4) contemplates the application of subsection (B)'s exclusion to gambling devices that afford a player an opportunity to obtain a nonimmediate right of replay.  Section (4) states, "Gambling device" means "any electronic, electromechanical, or mechanical contrivance *not excluded under Paragraph (B)* that for a consideration affords the player an opportunity to obtain anything of value," and a thing of value includes a nonimmediate right of replay.  *See* Tex. Penal Code Ann. § 47.01(4) (emphasis added), § 47.01(9).  Thus, looking to the literal language of section (4), a contrivance excluded under paragraph (B) could be one that includes as a thing of value a nonimmediate right of replay; that is, the literal language of the statute requires first an examination of whether a contrivance is excluded from the definition of gambling device under paragraph (B), and if it is, it is excluded from further analysis of section (4)'s definition of

gambling device. Thus, to give effect to both section 47.01(4)'s definition of gambling device and subsection (B)'s exclusion from that definition, we cannot agree with the State's contention that any nonimmediate right of replay renders subsection (B)'s exclusion inapplicable.

In summary, relying on the plain meaning of section 47.01 and applying that meaning to the undisputed facts here, the eight-liners seized from Magic Games Game Room reward a player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value (a ticket) redeemable for those items. We conclude that, as a matter of law, Barnes's eight-liner machines were not gambling devices because subsection (B)'s exclusion, the "fuzzy animal" exclusion, applied to them. *See* Tex. Penal Code Ann. § 47.01(4)(B); *Hardy*, 102 S.W.3d at 132. The trial court erred by concluding that the thirty-seven eight-liner machines were subject to forfeiture. We sustain Barnes's sole issue.[9]

## IV. CONCLUSION

Having sustained Barnes's sole issue, we reverse the trial court's forfeiture judgment as to the thirty-seven eight-liners, and we render judgment that the

---

[9]Barnes does not appear to challenge the forfeiture of the currency in his issue on appeal. Moreover, because Barnes admitted that he did not own the ATM machine, he does not have standing to challenge the forfeiture of the money that was taken from it. *See $17,329.00 v. State*, 880 S.W.2d 788, 789 (Tex. App.—Houston [1st Dist.] 1993, no writ) (holding that appellant had no standing to appeal forfeiture of $17,329.00 because he disclaimed ownership in the money and had no other interest therein).

thirty-seven eight-liners are not subject to forfeiture by the State. *See* Tex. R. App. P. 43.2(c). Because Barnes does not challenge, and does not have standing to challenge, the forfeiture of the money that was taken from the ATM machine that was on the premises, we affirm the trial court's forfeiture judgment as to the $1,760.00 in United States currency.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: June 21, 2012